The **PEOPLE of the State of Colorado,**
Plaintiff–Appellee,

v.

Stephen Corbin **ROTH**, Defendant–
Appellant.

No. 02CA0160.

Colorado Court of Appeals,
Div. V.

Aug. 14, 2003.

Certiorari Denied March 8, 2004.

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2002.

Ken Salazar, Attorney General, Elizabeth Rohrbough, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Robert J. Mulhern, Telluride, Colorado; Robert Unruh, Telluride, Colorado, for Defendant–Appellant.

Opinion by Judge ROTHENBERG.

Defendant, Stephen Corbin Roth, appeals the judgment of conviction entered upon a jury verdict finding him guilty of unlawful possession of drug paraphernalia. He challenges the trial court's pretrial ruling denying his motion to suppress evidence obtained as the result of an allegedly unlawful search of his car. We affirm.

After a hearing on defendant's motion to suppress, the trial court found the following. Police officers, acting with the intent to interdict persons transporting drugs to a music festival, posted large signs on a road stating

"Narcotics Checkpoint, One Mile Ahead" and "Narcotics Canine Ahead." The signs were part of an elaborate ruse because there was no checkpoint or other impediment to the free flow of traffic. The purpose of the signs was to allow police officers, dressed in camouflage clothing and hidden on a nearby hill, to monitor the reactions of persons traveling past the signs.

One of the officers watching the section of road near the signs (the first officer) testified that he saw a passenger in defendant's car toss a small item out of the window onto the side of the road. The officer radioed another police officer farther down the road, provided him with a description of defendant's car, and described the littering violation committed by the passenger.

A police officer stationed farther down the road (the second officer) flagged defendant down and directed him to pull into a campground area. The second officer informed defendant that he had been stopped because his passenger had been seen throwing an object from the car. Defendant told the officer the passenger had discarded a beverage can. The officer asked defendant for his license and registration which defendant provided.

Approximately one minute later, the first officer radioed the second officer and informed him he had retrieved the item the passenger had thrown from defendant's car, and it was a pipe containing residue suspected to be marijuana.

The second officer asked for permission to search defendant's car, but defendant refused. Nevertheless, the officer searched the car and discovered a marijuana pipe and some psilocybin mushrooms. When defendant asked the officer to retrieve an item from his backpack, the officer searched the backpack and discovered another marijuana pipe.

The trial court found that the police officers who testified were credible and denied defendant's motion. At trial, defendant was acquitted of the unlawful possession of mushrooms.

## I.

Defendant first contends the fictitious checkpoint violated the protections against unreasonable searches and seizures of the federal and state constitutions. We disagree.

### A.

■ A drug checkpoint in which vehicles are stopped without reasonable suspicion that the occupants have engaged in criminal activity constitutes illegal police conduct in violation of the Fourth Amendment. *Indianapolis v. Edmond*, 531 U.S. 32, 121 S.Ct. 447, 148 L.Ed.2d 333 (2000).

However, the use of fictitious or ruse checkpoints has presented a slightly different issue. *United States v. Flynn*, 309 F.3d 736 (10th Cir.2002), involved facts very similar to those presented here, and we agree with its reasoning.

There, the court addressed the constitutionality of such a fictitious drug checkpoint. The defendant was driving on an interstate highway when he passed signs reading "Drug Checkpoint 1/3 mile ahead" and "Drug Dogs in Use." The signs were part of a ruse orchestrated by police because there was no real checkpoint.

The defendant exited the highway and police officers watched as a passenger in the car opened the door and dropped a sack from the car. The officers retrieved the sack, determined that it contained narcotics, and radioed the information to other officers who stopped defendant's car and arrested him.

The court upheld the trial court's ruling denying the defendant's motion to suppress and concluded the fictitious drug checkpoint did not constitute an impermissible drug checkpoint. The court further concluded it was not unconstitutional for the police officers to have created a ruse which caused the defendant to abandon an item of property, the discovery of which provided reasonable suspicion to stop the defendant's vehicle. *United States v. Flynn, supra*, 309 F.3d at 739. *See People v. Santistevan*, 715 P.2d 792 (Colo.1986)(misrepresentation by police about the purpose of a search may weigh against a finding of consent but does not invalidate consent); *People v. Zamora*, 940 P.2d 939,

942 (Colo.App.1996)("Although deception by the police is not condoned by the courts, the limited use of ruses is supported by the overwhelming weight of authority.").

The *Flynn* court reasoned that the stop there was based on the individualized suspicion of illegal activity, and therefore was distinguishable from that in *Indianapolis v. Edmond, supra.*

Defendant relies on *Michigan Dep't of State Police v. Sitz*, 496 U.S. 444, 110 S.Ct. 2481, 110 L.Ed.2d 412 (1990); and *United States v. Martinez–Fuerte*, 428 U.S. 543, 96 S.Ct. 3074, 49 L.Ed.2d 1116 (1976). In both cases, the Supreme Court upheld the use of police roadblocks or checkpoints to examine motorists for their sobriety and immigration status, respectively, but the Court analyzed the constitutionality of the checkpoints using a balancing test articulated in *Brown v. Texas*, 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979).

■ Defendant maintains that the balancing test used in *Martinez–Fuerte, Brown,* and *Sitz* should have been used by the trial court in this case, and that if the court had done so, it would have been required to grant his motion to suppress. We disagree the balancing test applies where, as here, the stop by the police was not random, but was based on an individualized suspicion of criminal activity.

*Brown v. Texas, supra,* was not a checkpoint case. There, the defendant was convicted of violating a Texas statute making it a crime for a person to refuse to identify himself or herself to a peace officer who made a lawful stop and requested such information. The United States Supreme Court held the detention of the defendant was unreasonable because the police lacked a reasonable suspicion that he was involved in any criminal activity.

Citing *Martinez–Fuerte,* the Court in *Brown v. Texas, supra,* explained the need for a balancing test where the defendant is challenging the reasonableness of a seizure that is less intrusive than a traditional arrest. The Court stated that "[c]onsideration of the constitutionality of such seizures [should involve] a weighing of the gravity of the public

concerns served by the seizure, the degree to which the seizure advances the public interest, and the severity of the interference with individual liberty." *Brown v. Texas, supra,* 443 U.S. at 50, 99 S.Ct. at 2641, 61 L.Ed.2d at 361 (cites omitted).

In contrast to *Brown v. Texas, supra,* where the police had no evidence of any criminal activity, the police here observed defendant's passenger commit the offense of littering. This offense, while minor, justified the police in stopping defendant's car. *See* § 18–4–511(1), (4), C.R.S.2002 ("Any person who deposits, throws, or leaves any litter on any public or private property ... commits [the class two petty offense of] littering").

In *Texas v. Brown*, 460 U.S. 730, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983), police set up a routine license checkpoint. When the defendant was stopped and asked for his license, a police officer shined his flashlight into the car and saw small plastic vials and quantities of loose white powder later determined to be heroin. The Supreme Court upheld the search under the plain view doctrine. It did not discuss the constitutionality of the checkpoint. Thus, to the extent defendant here also relies on *Texas v. Brown, supra,* we conclude it is inapposite.

■ We are persuaded the analysis in *United States v. Flynn, supra,* is appropriate, and the court there did not reference the balancing test set forth in *Martinez–Fuerte, Brown,* or *Sitz.* We therefore conclude the use of the fictitious drug checkpoint here did not violate defendant's rights under the Fourth Amendment because the stop of his car by police was based on their individualized suspicion of unlawful activity.

### B.

Relying solely on his Fourth Amendment argument, defendant also contends the fictitious drug checkpoint violated his federal rights of due process, equal protection, privacy, and travel. But he does not offer any separate analysis to support these claims.

Because we have rejected his Fourth Amendment argument, we necessarily reject these derivative arguments.

## C.

Defendant next contends his rights under the Colorado Constitution were violated, and the motion to suppress should have been granted on that basis. We disagree.

On a few occasions, our supreme court has ruled that Article II, Section 7, of the Colorado Constitution affords broader protections than the Fourth Amendment of the United States Constitution. However, in every instance in which it has done so, the court has identified a privacy interest deserving of greater protection than that available under the Fourth Amendment. *See People v. Haley,* 41 P.3d 666, 672 (Colo.2001)(cases cited).

Here, however, while defendant claims he is entitled to broader protection under the Colorado Constitution, he is unable to explain how the ruse perpetrated by the police officers implicated a privacy interest.

The trial court's findings establish that if defendant's passenger had not violated the law against littering, defendant would not have been detained by the police officers who were conducting this interdiction operation. Indeed, the People conceded at oral argument—and we agree—that while police may stop a vehicle whose occupant they observed littering, a search based on littering alone would have been unreasonable.

We thus perceive no infringement upon a privacy interest that would justify interpreting Article II, Section 7, of the Colorado Constitution differently from the Fourth Amendment of the United States Constitution.

Nor are we aware of any textual or historical differences between the two constitutional provisions that would warrant a divergent interpretation. See *People v. Haley, supra,* 41 P.3d at 679 (Kourlis, J., dissenting)(divergence from interpretation of corollary provision in federal constitution is warranted when the language of the state constitution differs from its federal counterpart, or when the historical or legal context in which the state constitution was framed or has existed over time differs from its federal counterpart).

Furthermore, the state statutes upon which defendant relies provide no greater privacy protection than that which exists under the Fourth Amendment. Sections 16–3–102 (probable cause necessary for an arrest), 16–3–103 (reasonable suspicion necessary for an investigative detention), 16–3–110 (authority of officer to act when a felony or misdemeanor is committed in the officer's presence), C.R.S.2002.

Accordingly, we reject defendant's contention that the trial court erred in denying his motion to suppress and rejecting his argument based on the state constitution.

## II.

Defendant next contends the police officers did not have a lawful basis to stop and search his vehicle. Again, we disagree.

In reviewing a trial court's suppression order, we defer to the trial court's factual findings, and we will not disturb them if they are supported by competent evidence in the record. We review the trial court's conclusions of law de novo. *People v. Heilman,* 52 P.3d 224, 227 (Colo.2002).

"Probable cause to arrest exists when, under the totality of the circumstances at the time of arrest, the objective facts and circumstances available to a reasonably cautious officer at the time of arrest justify the belief that an offense has been or is being committed by the person arrested." *People v. King,* 16 P.3d 807, 813 (Colo.2001).

We reject defendant's assertion that the trial court incorrectly resolved certain conflicts in the suppression hearing evidence. To the contrary, we conclude the record adequately supports the trial court's findings of fact, and based on those findings about the officer's observations, the officers had probable cause to believe the passenger in defendant's car had committed the petty offense of littering. Section 18–4–511(1), (4), C.R.S. 2002.

The trial court accepted as credible the officers' testimony that, almost immediately after the stop, they learned from another officer that the item discarded by the passenger was drug paraphernalia with burnt resi-

due suspected to be marijuana. *See People v. Taylor,* 41 P.3d 681 (Colo.2002)(where police officers possess probable cause to arrest a passenger in a vehicle, they may stop the vehicle in order to effect an arrest of the passenger); *People v. Washington,* 865 P.2d 145 (Colo.1994)(the "fellow officer" rule provides that an arresting officer who does not personally possess sufficient information to constitute probable cause may nevertheless make a warrantless arrest if he or she acts upon the direction or as a result of a communication from a fellow officer, and the police, as a whole, possess sufficient information to constitute probable cause).

Accordingly, the trial court determined, and we agree, the police then had probable cause to believe the car contained evidence of a crime, and were justified in searching the car and its contents. *See People v. H.J.,* 931 P.2d 1177 (Colo.1997)(when an officer has made a lawful custodial arrest of an occupant of a vehicle, the officer may search the entire interior of the passenger compartment, even if the subject has already been removed from the vehicle; the authority to search the passenger compartment incident to arrest is automatic and does not depend upon the specific facts of each case); *People v. McMillon,* 892 P.2d 879 (Colo.1995)(officer had probable cause to search car where he observed a syringe in the car and the surrounding circumstances gave rise to an inference that the syringe was drug paraphernalia; probable cause to search car for drugs includes closed containers found within the car).

The officers' subjective motives were irrelevant. *Whren v. United States,* 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996)(otherwise lawful conduct by law enforcement officers is not made illegal or unconstitutional merely because the officers' subjective intent is illegitimate); *People v. Altman,* 938 P.2d 142, 146 (Colo.1997)(same).

We therefore conclude the trial court did not err in denying defendant's motion to suppress.

Judgment affirmed.

Judge VOGT and Judge CARPARELLI concur.