United States Court of Appeals
Fifth Circuit

**F I L E D**

April 7, 2005

Charles R. Fulbruge III
Clerk

In the

# United States Court of Appeals
## for the Fifth Circuit

_____

m 04-30676

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

BARRY C. GRIER,
ALSO KNOWN AS BARRY CORNELIUS GRIER,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Western District of Louisiana
m 3:03-CR-30031-02-RGJ

_____

Before SMITH, DENNIS, and
PRADO, Circuit Judges.

JERRY E. SMITH, Circuit Judge:[*]

Barry Grier appeals his conviction of pos-

session with intent to distribute cocaine and marihuana in violation of 21 U.S.C. §§ 841-(a)(1) and 846. Finding no error, we affirm.

## I.

Grier was the passenger in a vehicle driven by Tommy Howard, heading east on Interstate 20 toward Atlanta, Georgia. Right before the Camp Road exit in Ouachita Parish, Louisiana, a sign warns motorists of a "narcotics checkpoint" ahead, although no such checkpoint actually existed. Howard passed the sign and

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

promptly took the Camp Road exit. Deputy Sheriff David Crane was parked at the bottom of the exit and witnessed the vehicle driving eastbound in the westbound lane. Crane immediately pulled over the vehicle for improper lane usage.

When Howard opened his window, Crane detected an overwhelming scent of fabric softener. He asked Howard for his driver's license; Howard complied but avoided eye contact. Crane initiated a driver's license check during which he questioned Howard about his itinerary. Howard stated that he was taking Grier to see Grier's father in Atlanta and that Camp Road was a shortcut. He explained that he was Grier's cousin, and he named their mothers. Howard acknowledged that he was driving on the wrong side of the road because he was distracted by watching Crane in his rearview mirror.

Crane proceeded to ask Grier similar questions about their itinerary. Grier confirmed that they were headed to Atlanta to visit his father and that he was Howard's cousin. He gave a name for his own mother that was different from the name Howard had stated, and he could not give the name of Howard's mother, his claimed aunt. Crane then asked Grier whether there were any weapons in the vehicle. Grier immediately laughed and said no. Crane then asked whether any there were any illegal drugs. Grier glanced around the inside of the vehicle, then laughed and responded in the negative.

The government concedes that although the computer check took four to five minutes, it is uncertain when in the course of events the dispatcher replied, and it could have been as early as immediately before or during the questioning of Grier. After determining that Howard's license was valid, Crane concluded his ques-tioning of Grier and asked Howard whether any weapons were in the vehicle. Howard immediately laughed and said no. Crane then asked Grier whether there were any illegal narcotics. Howard looked at the vehicle, and then back at Crane with a nervous look, then laughed and said no.

Crane asked Howard whether he could search the vehicle, and Howard consented. During the search, he discovered several bricks of cocaine hidden under the seats of the vehicle and several bricks of marihuana in the trunk, wrapped in fabric softener sheets and plastic wrap.

Grier moved to suppress the discovered drugs on the ground that they are fruit of an illegal seizure under the Fourth Amendment. During the hearing on the motion to suppress, Crane testified that he had reasonable suspicion that Grier and Howard were involved in illegal narcotics activity based on (1) the strong odor of fabric softener, which he knew to be frequently used as a masking agent by drug smugglers; (2) the fact that they were both very nervous as he approached the vehicle and asked him questions; (3) the inconsistent answers about their relationship to each other; and (4) the differences in their reactions when asked about having either weapons or drugs. The district court denied the motion to suppress.

After the hearing, but before the ruling, Grier filed a motion to supplement the hearing record with other evidence, including transcripts of the local police department's radio transmissions for the evening of the stop, and Crane's testimony at his bond hearing. Although he did not proffer any of these items for the court's review, he argued that they would prove that the stop was pretextual. The district court denied the motion.

## II.

Grier argues that the evidence was the fruit of an illegal stop under the Fourth Amendment.[1] Grier does not object to the validity of the initial traffic stop for driving in the wrong lane, but rather challenges the scope of the valid stop.

As a threshold matter, we analyze vehicle stops in accordance with of *Terry v. Ohio*, 392 U.S. 1 (1968),[2] under which police investigatory stops are reviewed in two steps: We inquire (1) whether the officer's actions were justified at the inception of the stop; and (2) then whether the officer's subsequent actions were reasonably related in scope to the circumstances that justified the stop. *See Brigham*, 382 F.3d at 506 (citing *Terry*, 392 U.S. at 19-20). Because Grier does not object to the justification for the initial stop, we focus on the second stage of the *Terry* inquiry.

Under the second prong of the *Terry* inquiry, we must determine whether the officer's actions after he legitimately stopped Grier were "reasonably related to the circumstances that justified the stop, or to dispelling his reasonable suspicion developed during the stop." *Brigham*, 382 F.3d at 507. "This is because a detention must be temporary and last no longer than is necessary to effect the purpose of the stop, unless further reasonable suspicion, supported by articulable facts, emerges." *Id.* The essence of Grier's argument is that the seizure was unconstitutionally extended beyond the amount of time the officer needed to investigate the traffic offense without sufficient reasonable suspicion of drug trafficking.

According to the factual findings made by the district court, the officer detected the strong odor of fabric softener "immediately" after Howard opened his window. The court noted that Howard acted nervous during his initial questioning, avoided eye contact when asked questions, and stuttered when answering, and his hands were visibly shaking when he was asked to step out of the vehicle. Grier does not point to anything in the record to show that these factual findings were clearly erroneous. Although nervousness alone may not support reasonable suspicion of drug trafficking,[3] the nervous and erratic behavior of the driver, *combined* with the overwhelming scent of a known masking agent, did establish rea-

---

[1] In reviewing a ruling on a motion to suppress, we review factual findings for clear error and questions of law *de novo*. *See United States v. Brigham*, 382 F.3d 500, 506 n.2 (5th Cir. 2004). The evidence is considered in the light most favorable to the prevailing party. *See id.* (citing *United States v. Orozco*, 191 F.3d 578, 581 (5th Cir. 1999)).

[2] *See United States v. Brigham,* 382 F.3d 500, 506 (5th Cir. 2004) (citing *Berkemer v. McCarty*, 468 U.S. 420, 439 (1984); *Pennsylvania v. Mimms*, 434 U.S. 106, 109 (1977)).

[3] A stopped individual may be nervous for many reasons, and although it might be because the individual is trafficking drugs, the nervousness could equally be caused by the fact that the defendant is nervous about having committed a wide variety of other crimes, including the very traffic offense for which he was pulled over for. In *United States v. Dortch*, 199 F.3d 193, 199 (5th Cir. 1999), we concluded that suspicious and inconsistent answers, nervousness, confusion as to the relationship of the defendant to the vehicle's owner and the defendant's absence as an authorized driver on the renal contract "gave rise only to a reasonable suspicion that the car might have been stolen" and none of these factors established "reasonable or articulable suspicion that [the defendant] was trafficking in drugs."

sonable suspicion for drug trafficking, so Crane had the authority to continue the investigation even after the initial investigation for the traffic offense had concluded.[4]

### III.

Grier contends that the district court erred in denying his motion to supplement the suppression hearing record. We review this ruling for abuse of discretion.[5] Grier argues that the court erred in refusing to supplement the record with evidence that would indicate that the initial traffic stop was pretextual. The court did not abuse its discretion in refusing to supplement the record for this purpose, because it is well established that an officer may permissibly stop a driver if there is probable cause to believe that he has committed a traffic violation, irrespective of the officer's subjective motivation for the stop.[6]

AFFIRMED.

---

[4] The government argues that other facts in the record support the district court's conclusion that reasonable suspicion existed for drug trafficking, including the inconsistent answers given by both men about their common relatives, and the differences in their reactions between Crane's questions about whether they had any firearms or narcotics. Although these might support the district court's finding that reasonable suspicion existed in this case, we do not consider them, because the government concedes that these questions *might* have been asked after the computer check came back clean. Because the strong odor of fabric softener, combined with the nervousness, gave rise to a reasonable suspicion of drug trafficking, and because the district court did not commit clear error in its determination that these facts were available to Crane before the conclusion of his investigation of the initial reason for the traffic stop, we do not need to determine whether the inconsistent and suspicious answers were given before or after the permissible length of the initial stop.

[5] *Cf. United States v. George*, 201 F.3d 370, 372 (5th Cir. 2000) (stating that the standard of review for a district court's ruling on admissibility of evidence at trial is for abuse of discretion).

[6] *See Whren v. United States,* 517 U.S. 806 (1996) (holding that an initial stop is valid if there is an objective reason for the stop regardless of subjective motivations); *United States v. Castro*, 166 F.3d 728, 734 (5th Cir. 1999) (en banc) ("It is well settled that the reasonableness inquiry under the Fourth Amendment is an objective one, wholly divorced from the subjective beliefs of police officers.")