# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

December 29, 2011

No. 11-30313

Lyle W. Cayce
Clerk

EUNICE COOK WEBB,

Plaintiff – Appellant

v.

RODNEY ARBUCKLE, Individually & In His Official Capacity as Sheriff of DeSoto Parish; RICK PHARRIS; LISA GARCIA; STEPHANIE WHITE,

Defendants – Appellees

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 5:09-cv-00615-SMH-MLH

Before KING, JOLLY, and WIENER, Circuit Judges.

PER CURIAM:[*]

This case focuses on what has come to be known as a "ruse checkpoint." Here, police officers placed a sign on the shoulder of Highway I-49 in rural Louisiana advising drivers that a narcotics checkpoint was ahead. There was, however, no actual checkpoint. The sign was placed a short distance before drivers reached the exit for Asseff Road, a gravel road with no services such as

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 11-30313

gas stations, restaurants, or hotels.  Officers observed cars taking this exit and stopped those vehicles seen committing traffic violations or other violations of the law.  Plaintiff–Appellant Eunice Cook Webb, M.D., was stopped by police officers for failing to use her turn signal as she exited at Asseff Road.  While a citation was being written, Dr. Webb was questioned about her reasons for exiting the highway and her intended destination.  During this questioning, Dr. Webb appeared nervous.  She advised officers that she was a doctor, and she further stated that she might be in possession of controlled substances for which she did not have a prescription.  Officers searched her vehicle and found controlled substances in her medical bag, but they ultimately only issued her a citation for the traffic violation.  Dr. Webb contends that the stop lasted roughly an hour.  Dr. Webb sought declaratory and injunctive relief related to the officers' use of the ruse narcotics checkpoint, asserting that the operation violated the Fourth Amendment.  She also sought to recover damages under 42 U.S.C. § 1983, alleging that the initial stop, the search that ensued, and the duration of her detention violated her rights under the Fourth Amendment.  The district court granted summary judgment in favor of Defendants, and we affirm.

## I. FACTS AND PROCEDURAL BACKGROUND

On April 25, 2008, officers with the DeSoto Parish Sheriff's Office and other law-enforcement agencies conducted a sign detail operation at Highway I-49 and Asseff Road.  Pursuant to the operation, officers placed a sign on the shoulder of I-49 that read "Narcotics Checkpoint ½ Mile Ahead Caution K-9 on Duty."  The sign, however, was a ruse, and the narcotics checkpoint did not actually exist.  The sign was placed on the highway before the Asseff Road exit, which was a gravel road in both directions with no services such as gas stations, hotels, or restaurants.[1]  Drivers exiting I-49 at Asseff Road were observed by an

---

[1] Exits such as these are sometimes called "dead exits."

officer, and a driver was stopped only if he or she was seen committing a traffic violation or other violation of the law.  Absent a violation, a car taking the Asseff Road exit was not pulled over.  During a stop, an officer would question the driver, in part with the goal of determining whether there was reasonable suspicion or probable cause to suspect other violations of the law, including drug-related offenses.  A search of the vehicle could follow if reasonable suspicion or probable cause developed during the course of questioning.

On April 25, 2008, Plaintiff–Appellant Eunice Cook Webb, M.D., ("Dr. Webb") was stopped by officers conducting a sign detail operation because she exited I-49 at Asseff Road without using her turn signal.  While Dr. Webb was stopped, Sergeant Stephanie White ("Sergeant White") asked Dr. Webb for her license and registration and began the process of issuing a traffic citation.  As Sergeant White was working toward issuing the citation, Corporal Rick Pharris ("Corporal Pharris") questioned Dr. Webb about her reasons for taking the Asseff Road exit and her intended destination.  Dr. Webb became very nervous and anxious during this early portion of the stop. In addition to telling Corporal Pharris that she was a doctor, she showed him her Texas medical license.  She further stated that she might have a bag in her vehicle with medications, some of which could be controlled substances such as Lortab, and that she did not have a prescription for these medicines.

Sergeant White contacted Corporal Jayson Richardson ("Corporal Richardson") during the stop and asked him about the legality of a doctor's carrying controlled substances without a prescription.  Corporal Richardson indicated that Dr. Webb's statements regarding possession of prescription medicines without a prescription provided probable cause to search the vehicle.  Subsequently, Corporal Pharris, Agent Lisa Garcia ("Agent Garcia"), and Corporal Mike Hughes (the K-9 officer at the sign detail operation) searched Dr.

Webb's vehicle and bags.[2]  The search revealed items including vials Dr. Webb identified as Demerol or morphine.  Dr. Webb estimates the stop lasted for about an hour, while Defendants contend the stop was between twelve and thirty minutes in duration.  Ultimately, Dr. Webb was cited for failure to use her turn signal while exiting but was not charged with any drug-related offenses.

Dr. Webb brought a lawsuit in the United States District Court for the Western District of Louisiana against the sheriff of DeSoto Parish, Rodney Arbuckle ("Sheriff Arbuckle"), who was sued in both his official and individual capacities, and against Corporal Pharris, Agent Garcia, and Sergeant White, who were sued only in their individual capacities (collectively, "Defendants"). Dr. Webb alleged that Defendants' conduct in stopping and searching her vehicle violated the Fourth Amendment and sought compensatory and punitive damages under 42 U.S.C. § 1983.  Dr. Webb also sought a declaratory judgment that the sign detail operation violated the Fourth Amendment and requested injunctive relief preventing the use of sign detail operations by Sheriff Arbuckle and those acting pursuant to his knowledge, consent, and encouragement.  In addition, Dr. Webb asserted state-law claims against Defendants.

The district court granted summary judgment in favor of Defendants.[3] The court ruled that the sign detail was constitutionally valid, that the initial stop of Dr. Webb's vehicle did not violate the Fourth Amendment, and that qualified immunity shielded Defendants from suit regarding Dr. Webb's claims that the duration of her detention and the search of her vehicle violated her Fourth Amendment rights.

## II. DISCUSSION

---

[2] The parties dispute whether Dr. Webb consented to the search.

[3] The district court dismissed the state-law claims without prejudice, declining to exercise supplemental jurisdiction over these claims after Dr. Webb's other claims were dismissed.

No. 11-30313

"We review a grant of summary judgment de novo, applying the same standard as the district court." *Addicks Servs. v. GGP–Bridgeland, LP*, 596 F.3d 286, 293 (5th Cir. 2010). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) ("Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.") (citation and internal quotation marks omitted). An issue of fact is genuine if the evidence, viewed in the light most favorable to the nonmovant, is sufficient to support a verdict in the nonmovant's favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Under 42 U.S.C. § 1983, "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . ." However, "[q]ualified immunity protects officers from suit unless their conduct violates a clearly established constitutional right." *Mace v. City of Palestine*, 333 F.3d 621, 623 (5th Cir. 2003). This court employs a two-step analysis to determine the applicability of qualified immunity on summary judgment. "First, we determine whether, viewing the summary judgment evidence in the light most favorable to the plaintiff, the defendant violated the plaintiff's constitutional rights." *Freeman v. Gore*, 483 F.3d 404, 410 (5th Cir. 2007) (citations omitted). If not, the defendant is entitled to qualified immunity, and the analysis ends. *Id.* at 410–11. "If so, we . . . consider whether the defendant's actions were objectively unreasonable in light

of clearly established law at the time of the conduct in question." *Id.* at 411 (citation omitted). We are not required, however, to assess the two prongs of the qualified immunity analysis in that order, and instead may "exercise [our] sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Consequently, we may decline to address the first step of the qualified immunity analysis when we determine that a defendant did not act in an objectively unreasonable manner in light of clearly established law at the time of the alleged violation. *See id.* at 234–26; *see also McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc) ("Ultimately, a state actor is entitled to qualified immunity if his or her conduct was objectively reasonable in light of the legal rules that were clearly established at the time of his or her actions.").

"Once raised, a plaintiff has the burden to rebut the qualified immunity defense . . . . We do not require that an official demonstrate that he did not violate clearly established federal rights; our precedent places that burden upon plaintiffs." *Estate of Davis v. City of N. Richland Hills*, 406 F.3d 375, 380 (5th Cir. 2005). "Because qualified immunity constitutes an *immunity from suit* rather than a mere defense to liability, the defense is intended to give government officials a right not merely to avoid standing trial, but also to avoid the burdens of such pretrial matters as discovery . . . ." *McClendon*, 305 F.3d at 323 (citations and internal quotation marks omitted). Thus, qualified immunity claims should be resolved "at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991). "[L]aw enforcement officials who reasonably but mistakenly commit a constitutional violation are entitled to immunity." *Bazan v. Hidalgo Cnty.*, 246 F.3d 481, 488 (5th Cir. 2001). "When properly applied, [qualified immunity] protects 'all but the plainly incompetent or those

who knowingly violate the law.'" *al–Kidd*, 131 S. Ct. at 2085 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

A. *The Initial Traffic Stop Pursuant to the Ruse Checkpoint Operation*

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV. "[T]he permissibility of a particular law enforcement practice is judged by balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests." *Delaware v. Prouse*, 440 U.S. 648, 654 (1979). "[A] vehicle stop at a highway checkpoint effectuates a seizure within the meaning of the Fourth Amendment." *City of Indianapolis v. Edmond*, 531 U.S. 32, 40 (2000); *see also Prouse*, 440 U.S. at 653 ("The Fourth and Fourteenth Amendments are implicated in this case because stopping an automobile and detaining its occupants constitute a 'seizure' within the meaning of those Amendments, even though the purpose of the stop is limited and the resulting detention quite brief."). The legality of traffic stops is analyzed under the two-part test set out in *Terry v. Ohio*, 392 U.S. 1 (1968). *See United States v. Pack*, 612 F.3d 341, 349–50 (5th Cir. 2010). "First, [the court] examine[s] whether or not the officer's decision to stop the vehicle was justified at its inception. Second, [the court] determine[s] whether or not the officer's subsequent actions were reasonably related in scope to the circumstances that caused him to stop the vehicle in the first place." *Id.* at 350. "A search or seizure is ordinarily unreasonable in the absence of individualized suspicion of wrongdoing." *Edmond*, 531 U.S. at 37. "[T]he decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Whren v. United States*, 517 U.S. 806, 810 (1996).

The district court granted summary judgment in favor of Defendants regarding Dr. Webb's claims related to the initial stop of her vehicle,

determining that the stop was constitutional. We agree. For the reasons set out below, we hold that, regarding Dr. Webb's claims for damages related to the initial stop, the Defendants sued in their individual capacities were entitled to qualified immunity.[4]

In assessing whether the Defendants are entitled to qualified immunity, we first determine whether Dr. Webb has alleged a violation of her constitutional rights. Dr. Webb argues that the initial stop of her vehicle pursuant to the sign detail operation violated her Fourth Amendment rights in light of *City of Indianapolis v. Edmond*. In *Edmond*, the city of Indianapolis set up checkpoints for the primary purpose of interdicting unlawful drugs on its roads. 531 U.S. at 34–35. Cars were stopped simply because they were traveling down roads where roadblocks were in place. *Id.* at 35. If drivers gave consent to search their cars or some individualized suspicion developed during the stop, police officers would then search the vehicles detained at the checkpoint. *Id.* The Court ruled that the use of these checkpoints violated the Fourth Amendment because the motivation behind the checkpoints was essentially a general interest in crime control and cars were stopped in the absence of any individualized suspicion. *See id.* at 41, 43–44 ("We decline to suspend the usual requirement of

---

[4] Dr. Webb sought a preliminary and permanent injunction "enjoining and restraining [Sheriff] Arbuckle and all others acting pursuant to his knowledge, consent and encouragement from utilizing the mandatory drug check ruse." Dr. Webb also sought "a declaratory judgment declaring that the [ruse] drug checkpoint employed by the defendants herein on April 25, 2008 . . . violated the Fourth Amendment." However, Dr. Webb has failed to establish standing under Article III with respect to these claims by failing to allege a substantial likelihood that she would suffer future harm based on Defendants' use of a ruse checkpoint. *See Bauer v. Texas*, 341 F.3d 352, 358 (5th Cir. 2003) ("In order to demonstrate that a case or controversy exists to meet the Article III standing requirement when a plaintiff is seeking injunctive or declaratory relief, a plaintiff must allege facts from which it appears there is a substantial likelihood that he will suffer injury in the future."). We affirm the dismissal of these claims on this ground. *See Doe v. Tangipahoa Parish Sch. Bd.*, 494 F.3d 494, 504 (5th Cir. 2007) ("Because standing is jurisdictional, however, we must address it *sua sponte* . . . ."); *TIG Specialty Ins. Co. v. Pinkmonkey.com Inc.*, 375 F.3d 365, 369 (5th Cir. 2004) ("Summary judgment may be affirmed on any basis supported by the record.").

individualized suspicion where the police seek to employ a checkpoint primarily for the ordinary enterprise of investigating crimes. We cannot sanction stops justified only by the generalized and ever-present possibility that interrogation and inspection may reveal that any given motorist has committed some crime." *Id.* at 44.).

Dr. Webb contends that, because the primary purpose of the sign detail operation was the interdiction of illegal drugs, individualized suspicion related to crimes involving illegal drugs was required to justify the stop of her vehicle under the Fourth Amendment. In other words, although police officers only stopped her because she committed a traffic violation, Dr. Webb argues that individualized suspicion that she had committed a traffic violation did not justify stopping her car because the stop was not motivated by a desire to address the traffic violation, but instead was aimed at discovering and interdicting illegal drugs.

Contrary to Dr. Webb's assertions, however, the officers' subjective motivations for the initial stop did not render the seizure unconstitutional. Although the court in *Edmond* examined the purposes behind the roadblock operation, it did so only because it was addressing the "validity of Fourth Amendment intrusions undertaken pursuant to a general scheme *without individualized suspicion.*" *See id.* at 45–46 (emphasis added). Here, by contrast, cars were stopped only when there was an objective legal basis to do so (i.e., traffic violations or other observed violations of the law).[5] As the Supreme Court has made clear, "Fourth Amendment reasonableness is predominantly an

---

[5] In this case, Dr. Webb was stopped for the failure to signal as she was exiting the highway. *See* LA. REV. STAT. § 32:104(B) ("Whenever a person intends to make a right or left turn which will take his vehicle from the highway it is then traveling, he shall give a signal of such intention in the manner described hereafter and such signal shall be given continuously during not less than the last one hundred (100) feet traveled by the vehicle before turning.").

objective inquiry. We ask whether the circumstances, viewed objectively, justify [the challenged] action. If so, that action was reasonable *whatever* the subjective intent motivating the relevant officials." *Ashcroft v. al–Kidd*, 131 S. Ct. 2074, 2080 (2011) (emphasis in original) (citations and internal quotation marks omitted); *see also United States v. Castro*, 166 F.3d 728, 734 (5th Cir. 1999) (en banc) ("It is well settled that the reasonableness inquiry under the Fourth Amendment is an objective one, wholly divorced from the subjective beliefs of police officers. [S]o long as police do no more than they are objectively authorized and legally permitted to do, their motives in doing so are irrelevant and hence not subject to inquiry.") (citations and internal quotation marks omitted).[6] Thus, because a traffic violation provides an objective basis for the initial stop of an automobile, the subjective motivations of the police in making a stop do not affect the constitutional analysis. *See al–Kidd*, 131 S. Ct. at 2082 ("Our unanimous opinion [in *Whren*, 517 U.S. at 810, 813] held that we would not look behind an objectively reasonable traffic stop to determine whether racial profiling or a desire to investigate other potential crimes was the real motive."); *Whren*, 517 U.S. at 812 ("Not only have we never held, outside the context of inventory search or administrative inspection . . . , that an officer's motive invalidates objectively justifiable behavior under the Fourth Amendment; but we have repeatedly held and asserted the contrary."); *Scott v. United States*, 436

---

[6] Dr. Webb contends that *United States v. Ellis*, 330 F.3d 677 (5th Cir. 2003), and *United States v. Portillo–Aguirre*, 311 F.3d 647 (5th Cir. 2002), suggest that the checkpoint at issue here was an unconstitutional "end run around *Edmond*." However, the decisions in *Ellis* and *Portillo* turned on the length of the detention following an initially valid stop, not on the fact that the initial stop was allegedly made for pretextual reasons. *See Ellis*, 330 F.3d at 678; *Portillo*, 331 F.3d at 655. Thus, these cases do not suggest that the subjective motivations behind a stop are relevant to the constitutional analysis when that stop is based on probable cause. Dr. Webb also cites *Collins v. Ainsworth* to support her argument that the ruse checkpoint at issue here is unconstitutional, but *Collins*, like *Edmond*, involved the use of an actual roadblock to effect suspicionless stops. *See Collins v. Ainsworth,* 382 F.3d 529, 537–39 (5th Cir. 2004). Thus, *Collins* does not apply.

No. 11-30313

U.S. 128, 138 (1978) ("We have since held that the fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action."); *United States v. Robinson*, 414 U.S. 218, 221 n.1 (1973) (stating that a traffic violation arrest would not be unconstitutional if it were "a mere pretext for a narcotics search"); *see also United States v. Grier*, 127 F. App'x 712, 715 (5th Cir. 2005) (indicating that an officer's subjective motivations for stopping a car are irrelevant when "there is probable cause to believe that he has committed a traffic violation").

Numerous courts have upheld the constitutionality of ruse checkpoint operations like the one in this case or have implicitly approved of their use.[7] For instance, in *United States v. Martinez*, 358 F.3d 1005, 1006–07 (8th Cir. 2004), officers stopped Orlando Martinez ("Martinez") for rolling through a stop sign at the top of an exit ramp that followed a sign advising of an upcoming drug checkpoint. Martinez argued that the police were operating an illegal checkpoint, relying in part on *Edmond*. *Id.* at 1008. The court rejected Martinez's contention, distinguishing *Edmond* as involving an "actual checkpoint[] at which motorists were stopped regardless of whether they had committed a traffic violation" and noting that "[a]ny traffic violation, however minor, provides probable cause for a traffic stop." *Id.* at 1008–09 (citation and

---

[7] In addition to the cases we discuss at some length, the constitutionality of ruse checkpoint operations has been upheld in at least the following cases: *United States v. Wright*, 512 F.3d 466, 471 (8th Cir. 2008); *Roth v. Green*, 466 F.3d 1179, 1189–91 (10th Cir. 2006); *United States v. Carr*, No. 09-40071-02, 2010 WL 1424362, at *4–5 (D. Kan. Apr. 5, 2010); *People v. Roth*, 85 P.3d 571, 573–74 (Colo. App. 2003); *United States v. Johnson*, 59 M.L. 666, 673 (A.F. Ct. Crim. App. 2003); *cf. Grier*, 127 F. App'x at 715 (upholding the district court's decision not to supplement the record with evidence that a traffic stop made during a ruse checkpoint operation was pretextual because "it is well established that an officer may permissibly stop a driver if there is probable cause to believe that he has committed a traffic violation, irrespective of the officer's subjective motivation for the stop"); *Missouri v. Mack*, 66 S.W.3d 706, 709 (Mo. 2002) (indicating that taking a dead exit following a sign advising of an upcoming narcotics checkpoint was sufficient to justify an initial stop).

internal quotation marks omitted).[8] The court further noted that "[t]he fact that the officers may have believed Martinez was carrying illegal drugs does not invalidate an otherwise valid stop." *Id.* at 1009 (citation omitted). In upholding the constitutionality of another ruse checkpoint operation on similar grounds, the court in *United States v. Williams*, 359 F.3d 1019, 1021 (8th Cir. 2004) stated that "the deputy here probably pursued the traffic violation because he suspected drug trafficking . . . . But a law enforcement officer's ulterior motives in initiating contact with an individual (or his pursuit of the more general programmatic purposes of the operation) are irrelevant to the Fourth Amendment question when probable cause . . . exists."). In addressing a ruse checkpoint operation, the Seventh Circuit stated:

> Wendt argues that based on *City of Indianapolis v. Edmond* . . . , the traffic stop was unreasonable because the officers lacked individualized suspicion. Moreover, Wendt asserts that the DEA established a "programmatic regiment" to stop and search cars with out-of-state license plates for drugs. An automobile stop will violate the Constitution if it is deemed "unreasonable" under the circumstances. The decision to stop an automobile is reasonable when the police have probable cause to believe that a traffic violation has occurred. Wendt's reliance on *Edmond* is misplaced.
>
> In *Edmond*, the police established various drug checkpoints, where officers stopped and questioned the driver of every car that passed through. The Supreme Court found that officers seized motorists without any particularized suspicion, a violation of the Fourth Amendment. In contrast, here, the traffic stop was conducted based on the officers' reasonable belief that traffic violations had occurred.

---

[8] The Eighth Circuit had previously held that a ruse checkpoint operation was unconstitutional where officers relied heavily on drivers' decisions to exit after driving past signs describing a nonexistent drug checkpoint when stopping vehicles and did not base stops on traffic violations. *See United States v. Yousif*, 308 F.3d 820, 827–28 (8th Cir. 2002) (noting that "the mere fact that some vehicles took the exit under such circumstances does not, in our opinion, create individualized reasonable suspicion of illegal activity as to every one of them"). Thus, that circuit's later holding that a ruse checkpoint operation requiring a traffic violation to precede the initial stop was constitutional is of particular note.

No. 11-30313

*United States v. Wendt*, 465 F.3d 814, 816–17 (7th Cir. 2006) (citations omitted). Similarly, in *United States v. Flynn*, 309 F.3d 736, 738–39 (10th Cir. 2002), the Tenth Circuit held the use of a ruse checkpoint was constitutional and rejected the argument that such checkpoints were illegal under *Edmond*. As these courts have noted, ruse checkpoint operations that stop cars only when there is probable cause, such as the sign detail operation at issue in the instant case, are distinguishable from *Edmond* and are constitutional under the Fourth Amendment. *Cf. Edmond*, 531 U.S. at 47 ("When law enforcement authorities pursue primarily general crime control purposes at checkpoints such as here, however, stops can only be justified by some quantum of individualized suspicion.").

Viewed in the light most favorable to Dr. Webb, the evidence does not demonstrate that the initial stop of Dr. Webb's vehicle violated her Fourth Amendment rights. As we stated above, this ends the qualified immunity analysis, and thus we affirm the district court's grant of summary judgment with regard to these claims because qualified immunity shields Defendants sued in their individual capacities from suit.

*B. The Length of Dr. Webb's Detention*

Dr. Webb argues that her detention violated the Fourth Amendment because it lasted longer than five minutes—the maximum amount of time, according to Sergeant White's testimony, that it took to issue a traffic citation.[9] Dr. Webb estimates the detention lasted roughly an hour, while Defendants contend the stop lasted between twelve and thirty minutes. The district court

---

[9] For the first time on appeal, Dr. Webb argues that her Fourth Amendment rights were violated because of a ten-minute delay that she alleges took place after the search of her vehicle was complete. Because she did not raise this argument before the district court, however, it is waived. *See Martco Ltd. P'ship v. Wellons, Inc.*, 588 F.3d 864, 877 (5th Cir. 2009) ("[A]rguments not raised before the district court are waived and cannot be raised for the first time on appeal."). We focus instead on the total length of the detention.

13

No. 11-30313

assumed the detention lasted as long as an hour and granted summary judgment with regard to this claim on the ground of qualified immunity.[10]

During a traffic stop, "[t]he detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop." *United States v. Banuelos–Romero*, 597 F.3d 763, 766–67 (5th Cir. 2010) (citation and internal quotation marks omitted). Pursuant to the initial traffic stop, an officer may request a driver's license and registration and run a computer check based on the information provided. *See United States v. Dortch*, 199 F.3d 193, 198 (5th Cir. 1999). During the stop, an officer may also ask questions, including questions unrelated to the stop's purpose. *See United States v. Macias*, 658 F.3d 509, 517 (5th Cir. 2011); *United States v. Lopez–Moreno*, 420 F.3d 420, 430–31 (5th Cir. 2005) (stressing that the length of the detention, not the subject of questioning, is key when assessing whether a stop was impermissibly prolonged). An officer may continue the detention "if additional reasonable suspicion arises in the course of the stop and before the initial purpose of the stop has been fulfilled . . . ." *Banuelos–Romero*, 597 F.3d at 767 (citation and internal quotation marks omitted). "[T]he detention may continue until the new reasonable suspicion has been dispelled or confirmed," and the presence of reasonable suspicion, which requires a lesser showing than probable cause, is assessed based on the totality of the circumstances. *Id.*

Dr. Webb suggests that her detention was impermissibly prolonged because no reasonable suspicion arose while the purpose of the traffic stop was being effectuated. However, while Sergeant White was engaged in citing Dr. Webb for the traffic violation, which was the purpose of the initial stop, Dr. Webb stated that she might be in possession of medications, including the

---

[10] In *Lockett v. New Orleans City*, 607 F.3d 992, 1000 (5th Cir. 2010), this court found that a one-hour detention was not unreasonable where phone calls made by the driver prolonged the stop.

controlled substance Lortab, for which she did not have a prescription. In addition, Dr. Webb was admittedly very nervous and anxious during the stop, and she had taken a dead exit that followed a sign advising of an upcoming narcotics checkpoint.

Dr. Webb contends that her possession of controlled substances was not illegal, that her nervousness alone was not a sufficient basis for prolonging the stop, and that her decision to exit was wholly compatible with innocent behavior. Dr. Webb testified that she had a "narcotics license" entitling her to carry controlled substances, but as the district court noted, there was no summary judgment evidence that this license was shown to officers during the stop. Thus, although Dr. Webb's possession of controlled substances may have been wholly legal, it was not objectively unreasonable, based on the information available at the time of the stop, for officers to suspect Dr. Webb's possession of controlled substances constituted illegal activity. Further, although Dr. Webb may be correct that her nervousness alone was insufficient to justify prolonging the stop, as was her decision to take the Asseff Road exit, we do not find that the officers were objectively unreasonable in extending Dr. Webb's detention when the circumstances of the stop are viewed as a whole. *Cf. Williams*, 359 F.3d at 1021 (indicating that taking a dead exit was "suspicious, even though the suspicion engendered [by that act alone] is insufficient for Fourth Amendment purposes"). Consequently, the district court was correct in granting summary judgment in favor of Defendants sued in their individual capacities on the basis of qualified immunity with regard to Dr. Webb's claims related to the length of her detention.

## C. *The Scope of the Search*

Dr. Webb argues that the officers' search should have been restricted to the contents of her doctor's bag and that extending the scope of the search to other bags and parts of the vehicle was unjustified and constitutionally

impermissible.[11] Dr. Webb relies primarily on *California v. Acevedo*, 500 U.S. 565 (1991), as support for her argument. In *Acevedo*, a police officer observed a man identified as Jamie Daza claim a package containing bags of drugs at a Federal Express office. *Id.* at 566–67. The officer followed Mr. Daza to an apartment and observed Mr. Acevedo leave that apartment with a bag resembling those in the package picked up by Mr. Daza. *Id.* at 567. Mr. Acevedo put the bag in the trunk of a car, and officers stopped him as he was driving away. *Id.* According to the Court, "[t]he facts in the record reveal that the police did not have probable cause to believe that contraband was hidden in any other part of the automobile [than in the bag in the trunk,] and a search of the entire vehicle would have been without probable cause and unreasonable under the Fourth Amendment." *Id.* at 580. Because Dr. Webb stated that she might have controlled substances in her doctor's bag, she contends that, as in *Acevedo*, the officers' suspicion was limited to a single bag, and a more expansive search violated her Fourth Amendment rights. The district court granted summary judgment in favor of Defendants sued individually based on qualified immunity regarding their conduct during the search of Dr. Webb's vehicle.

We find that the present case is distinguishable from *Acevedo* and hold that the officers did not act in an objectively unreasonable manner by searching Dr. Webb's entire vehicle. A warrantless search of an automobile is appropriate "if (1) the officer conducting the search had probable cause to believe that the vehicle in question contain[ed] property that the government may properly seize; and (2) exigent circumstances justified the search." *Banuelos–Romero*, 597 F.3d at 767 (citation and internal quotation marks omitted). When a vehicle is stopped on the highway, the automobile's potential mobility satisfies the

---

[11] There was conflicting testimony regarding whether Dr. Webb consented to the search of her vehicle, so the district court based its analysis on the assumption that Dr. Webb did not consent to the search.

requirement of exigent circumstances. *Id.* Here, in contrast to *Acevedo*, the officers' suspicion did not originate outside of the vehicle and the officers' observations did not limit their suspicion to a single bag. *See Acevedo*, 500 U.S. at 567. Instead, Dr. Webb's statement that she might have controlled substances in her medical bag was the only fact that could have limited the officers' suspicion to the single bag. Although Dr. Webb was admirably candid with the officers at the scene, advising them of the fact that she was in possession of controlled substances and alerting the officers to their location, we do not find that the officers acted in an objectively unreasonable manner by expanding the search to her entire car. As the Supreme Court held in *United States v. Ross*, 456 U.S. 798, 825 (1982), "[i]f probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search." *Id.* at 825. Dr. Webb stated that she might be in possession of controlled substances and was uncertain what substances she had in the car. Based on these statements, the officers did not act unreasonably in suspecting that prescription drugs could have been anywhere in the vehicle. Thus, we affirm the district court's grant of summary judgment on the ground of qualified immunity regarding the scope of the search of Dr. Webb's vehicle.

*D. Claims Against Sheriff Arbuckle*

Finally, Dr. Webb contends that Sheriff Arbuckle should have been held liable under § 1983 because of his approval and oversight of the sign detail operation, even though he did not participate directly in Dr. Webb's traffic stop. "A supervisory officer cannot be held liable under § 1983 for the actions of subordinates on any theory of vicarious liability." *Thibodeaux v. Arceneaux*, 768 F.2d 737, 739 (5th Cir. 1985). However, "[s]upervisory liability may . . . exist 'without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy itself is a repudiation of

constitutional rights and is the moving force of the constitutional violation.'" *Cozzo v. Tangipahoa Parish Council*, 279 F.3d 273, 289 (5th Cir. 2002) (quoting *Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987)); *see also Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002) (discussing the heightened pleading standard applicable to claims against supervisory officials sued in their individual capacities).[12] Thus, the sign detail operation must be unconstitutional for Dr. Webb's claims against Sheriff Arbuckle to succeed, and as we discuss above, this is not the case.[13] Because there was no constitutional violation, we affirm the district court's grant of summary judgment dismissing the claims against Sheriff Arbuckle.

### III. CONCLUSION

For the reasons stated above, the district court's grant of summary judgment is AFFIRMED.

Judge WIENER concurs in the judgment only.

---

[12] Dr. Webb brought claims against Sheriff Arbuckle in his individual and official capacities. Dr. Webb's § 1983 claim against Sheriff Arbuckle in his official capacity also requires proof of an unconstitutional policy or custom. *See Parm v. Shumate*, 513 F.3d 135, 142 (5th Cir. 2007) ("In a suit brought against a municipal official in his official capacity, the plaintiff must show that the municipality has a policy or custom that caused his injury.").

[13] Dr. Webb also argues that the sign detail operation was unconstitutional under *Delaware v. Prouse*, 440 U.S. 648, 654 (1979), contending that "[t]he district court erred in failing to recognize the need for explicit limitations relating to post stop activities." However, pursuant to the sign detail operation at issue in this case, a traffic stop would only be prolonged if the driver consented to a search or if there was reasonable suspicion or probable cause to suspect another violation. Thus, the officers here did follow objective standards in their post-stop conduct. Consequently, the sign detail operation was not unconstitutional under *Prouse*.