# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

February 22, 2010

No. 09-10465

Charles R. Fulbruge III
Clerk

UNITED STATES OF AMERICA,

Plaintiff–Appellee

v.

RAMON BANUELOS-ROMERO,

Defendant–Appellant

Appeal from the United States District Court
for the Northern District of Texas

Before HIGGINBOTHAM, GARZA, and PRADO, Circuit Judges.

PRADO, Circuit Judge:

Appellant Ramon Banuelos-Romero appeals the denial of his motion to suppress methamphetamine seized in a warrantless search of his automobile. The district court denied Appellant's motion, and Appellant entered a conditional plea preserving the right to appeal the denial of his motion to suppress. Because we hold that law enforcement had probable cause to search Appellant's vehicle, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

While patrolling Interstate 40, Trooper Ben Dollar of the Texas Department of Public Safety ("DPS") observed Appellant cross onto the shoulder while driving what appeared to be a Ford Crown Victoria. Trooper Dollar pulled

No. 09-10465

Appellant over because he was concerned that Appellant was falling asleep or intoxicated. As he waited for Appellant and Appellant's female passenger to gather their driver's licenses and insurance information, Trooper Dollar placed his hand on the car's windshield and noticed fresh black adhesive. Closer inspection revealed silicone sealant slathered all over the sides of the windshield. Trooper Dollar also smelled a strong silicone odor coming from inside the vehicle.

Trooper Dollar also noticed scarring on screws holding a plastic piece between the hood and windshield, which would have to be removed to replace the windshield. Trooper Dollar also observed that Mercury emblems had been removed from the car and replaced with Ford emblems. The computer check revealed that the car was actually a 2004 Mercury Grand Marquis, which has an identical body to a Ford Crown Victoria.

Trooper Dollar found the replacement of the windshield and the attempt to hide the make and model of the car suspicious because he knew from his training that the Mercury Grand Marquis is a popular drug-smuggling car because it has a hidden compartment, known as a "firewall," located between the dashboard and the engine of the vehicle. Trooper Dollar knew the firewall on the Grand Marquis is only accessible by removing the windshield or dashboard.

Because Appellant and the female passenger spoke limited English, Trooper Dollar called bilingual Trooper Oscar Esqueda on his cellular phone to speak with them. Before he handed the phone to the female passenger, Trooper Dollar told Trooper Esqueda that he believed they had a "windshield load" and wanted Trooper Esqueda to see if their stories matched.

The passenger and Appellant told Trooper Esqueda that they were

No. 09-10465

traveling from California to Arkansas to find work. Appellant also said that he bought the car a week and a half prior from a man in Arkansas. Trooper Dollar observed both the passenger and Appellant as they spoke with Trooper Esqueda and noted that they appeared nervous. After he spoke with both of them, Trooper Esqueda informed Trooper Dollar that although their stories were largely consistent, he found their story about traveling across the country unlikely.

Trooper Dollar then obtained computer clearances for the vehicle and for Appellant and his passenger's licenses. Trooper Dollar asked Appellant a series of questions in his limited Spanish about whether Appellant had any contraband in the vehicle, to which Appellant responded negatively. Trooper Dollar then asked Appellant "Puedo registrar el car si or no?" Appellant responded affirmatively in English, then in Spanish. Trooper Dollar then searched the car at the side of the interstate. After finding no contraband, Trooper Dollar drove with Appellant in his patrol car to a DPS location while the female passenger followed driving the Mercury Grand Marquis. After troopers removed Appellant's vehicle's windshield, they found methamphetamine hidden in the firewall.

The Government charged Appellant with possession of methamphetamine with intent to distribute. Appellant moved to suppress the methamphetamine, arguing that Trooper Dollar and DPS violated his Fourth Amendment right against unreasonable searches and seizures. A magistrate judge held an evidentiary hearing in which Troopers Dollar and Esqueda, Appellant, a Spanish language interpreter, and an expert on Texas law testified.

The magistrate judge found the initial stop valid, and that before

3

effectuating the purpose of the initial stop, DPS developed reasonable suspicion that Appellant's vehicle contained contraband.  The magistrate judge found that Appellant had not voluntarily consented to the search because when Trooper Dollar asked, "Puedo registrar el car si or no," Appellant thought Trooper Dollar wanted to check the vehicle's registration.  However, the magistrate judge denied the motion to suppress because the totality of the circumstances gave DPS probable cause to search the vehicle, which, in addition to exigent circumstances created by the vehicle's presence on the side of the interstate, fit the automobile exception to the Fourth Amendment's warrant requirement.  The district court adopted the magistrate judge's findings, Appellant conditionally pled guilty to possession of methamphetamine with intent to distribute under 21 U.S.C. § 841(a)(1), and the district court sentenced him to 168 months' imprisonment.  This appeal followed.

## II. DISCUSSION

We review the district court's factual findings for clear error and its legal conclusions *de novo*.  *United States v. Ibarra*, 493 F.3d 526, 530 (5th Cir. 2007) (citing *United States v. Runyan*, 275 F.3d 449, 456 (5th Cir. 2001)).  Whether those facts establish probable cause is a legal question that we review *de novo*.  *United States v. Hearn*, 563 F.3d 95, 103 (5th Cir. 2009) (citing *United States v. Muniz-Melchor*, 894 F.2d 1403, 1439 n.9 (5th Cir. 1990)).

### A.    Illegal Detention

"The Fourth Amendment protects individuals from unreasonable searches and seizures.  Traffic stops are considered seizures within the meaning of the Fourth Amendment." *United States v. Grant*, 349 F.3d 192, 196 (5th Cir. 2003) (citing *Delaware v. Prouse*, 440 U.S. 648, 653 (1979)).  To determine whether a

seizure is reasonable, we consider (1) "whether the officer's action was justified at its inception," and (2) "whether the officer's subsequent actions were reasonably related in scope to the circumstances that justified the stop." *United States v. Brigham*, 382 F.3d 500, 506 (5th Cir. 2004) (en banc) (citing *Terry v. Ohio*, 392 U.S. 1, 19–20 (1968)).

"For a traffic stop to be justified at its inception, an officer must have an objectively reasonable suspicion that some sort of illegal activity, such as a traffic violation, occurred, or is about to occur, before stopping the vehicle." *United States v. Lopez-Moreno*, 420 F.3d 420, 430 (5th Cir. 2005) (citing *United States v. Breeland*, 53 F.3d 100, 102 (5th Cir. 1995)). Pursuant to a valid traffic stop, "an officer can request a driver's license, insurance papers, vehicle registration, run a computer check thereon, and issue a citation." *United States v. Shabaz*, 993 F.2d 431, 437 (5th Cir. 1993). The "detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop . . . ." *Brigham*, 382 F.3d at 507.

However, if "additional reasonable suspicion arises in the course of the stop and before the initial purpose of the stop has been fulfilled, then the detention may continue until the new reasonable suspicion has been dispelled or confirmed." *Lopez-Moreno*, 420 F.3d at 431. An officer has reasonable suspicion when he "can point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the search and seizure." *Id.* at 430 (citing *United States v. Santiago*, 310 F.3d 336, 340 (5th Cir. 2002)). We look at the "totality of the circumstances of each case to see whether the detaining officer has a particularized and objective basis for suspecting legal wrongdoing." *Id.* (internal quotation marks omitted).

"[R]easonable suspicion need not rise to the level of probable cause." *Id.* (citing *United States v. Arvizu*, 534 U.S. 266, 274 (2002)).

Appellant argues that DPS violated his Fourth Amendment rights when Trooper Dollar detained him after obtaining computer clearances on his license and vehicle. The Government counters that by the time Trooper Dollar obtained computer clearances, he had developed a reasonable suspicion that Appellant's vehicle contained contraband, and that Trooper Dollar could thus continue the detention until he dispelled or confirmed that suspicion. We agree with the Government.

Trooper Dollar had an objective basis for suspecting legal wrongdoing based on the fresh sealant, strong silicone odor, and scarred screws that strongly indicated the windshield had been recently replaced. Trooper Dollar knew that Mercury Grand Marquis's have a hidden compartment that can only be accessed by removing the windshield. This information formed the basis of Trooper Dollar's reasonable suspicion, and allowed him to continue the detention until he confirmed or dispelled the suspicion that there was contraband hidden in the vehicle. *See id.* at 431.

## B.    Probable Cause

We now turn to whether DPS had probable cause to search the vehicle, because if probable cause existed, Appellant's consent was not required for Trooper Dollar to search. *See United States v. Mendoza-Gonzalez*, 318 F.3d 663, 666 (5th Cir. 2003). Law enforcement may conduct a warrantless search of an automobile if "(1) the officer conducting the search had 'probable cause to believe that the vehicle in question contain[ed] property that the government may properly seize'; and (2) exigent circumstances justified the search." *United*

No. 09-10465

*States v. Castelo*, 415 F.3d 407, 412 (5th Cir. 2005) (quoting *United States v. Reyes*, 792 F.2d 536, 538 (5th Cir. 1986)) (alteration in original). In a vehicle stop on a highway, "the fact of the automobile's potential mobility" supplies the requisite exigency. *United States v. Sinisterra*, 77 F.3d 101, 104 (5th Cir. 1996); *see also Mack v. City of Abilene*, 461 F.3d 547, 553 n.2 (5th Cir. 2006) (discussing the automobile exception to the warrant requirement).

"It is well-settled that probable cause to search an automobile exists when trustworthy facts and circumstances within the officer's personal knowledge would cause a reasonably prudent man to believe that the vehicle contains contraband." *United States v. Edwards*, 577 F.2d 883, 895 (5th Cir. 1978) (en banc) (per curiam). "Probable cause determinations are not to be made on the basis of factors considered in isolation, but rather on the totality of the circumstances." *United States v. Reed*, 882 F.2d 147, 149 (5th Cir. 1989). "[A] police officer may draw inferences based on his own experience in deciding whether probable cause exists, including inferences that might well elude an untrained person." *Hearn*, 563 F.3d at 103 (citations and internal quotation marks omitted) (alteration in original). "Proof of probable cause requires less evidence than . . . proof beyond a reasonable doubt—but more than 'bare suspicion.'" *United States v. Raborn*, 872 F.2d 589, 593 (5thCir. 1989) (quoting *Brinegar v. United States*, 338 U.S. 160, 175 (1949)).

Appellant argues that Trooper Dollar searched his vehicle because he fit a drug courier profile. The Government claims that DPS had probable cause to search the vehicle based on the totality of the circumstances. While Appellant correctly asserts that merely fitting a drug courier profile will not suffice to raise probable cause, Trooper Dollar based his search on specific facts that go beyond

No. 09-10465

Appellant fitting a drug courier profile. Viewing the totality of the circumstances, we conclude that Trooper Dollar had probable cause to search Appellant's vehicle based on his training and experience.[1]

We have previously held that evidence of a non-standard hidden compartment supports probable cause. *See, e.g.*, *United States v. Estrada*, 459 F.3d 627, 633 (5th Cir. 2006) ("[U]nder the law of this circuit, evidence of a hidden compartment supports 'probable cause' for a search/arrest . . . .") (citations omitted). In *United States v. Inocencio*, we found that the "discovery of fresh paint (on a brand new truck) around the fender wells and the fresh undercoating beneath the bed of the truck" contributed to create a "reasonable belief that the vehicle contained a false compartment," and that such reasonable belief "would create sufficient probable cause to search the vehicle." 40 F.3d 716, 724 (5th Cir. 1994). In *United States v. Price*, we found probable cause where, at a permanent checkpoint, border patrol agents noticed burn marks in the bed of a pickup truck and a hidden compartment under the vehicle. 869 F.2d 801, 804 (5th Cir. 1989). "Once the agents had discovered the secret compartment they had probable cause to search the compartment itself." *Id.*

This case differs because the firewall is part of the vehicle's design, whereas in *Inocencio* and *Price*, the vehicles were altered to add a hidden compartment. We find Appellant's case analogous, however, because the

---

[1] It is of no consequence that DPS conducted a more thorough search of the vehicle at DPS location. Where the police have probable cause to search a vehicle on the side of the interstate, they may also perform a more thorough search at the station. "'[G]iven the scope of the initial intrusion caused by seizure of an automobile, there is no constitutional difference between the proper search on the highway and the later search at the station.'" *United States v. Moody*, 564 F.3d 754, 761 (5th Cir. 2009) (quoting *United States v. Shaw*, 701 F.2d 367, 379 (5th Cir. 1983)).

No. 09-10465

windshield showed obvious signs of recent replacement and the hidden compartment could only be accessed by removing the windshield. While there are innocent reasons for windshield replacement, the facts here strongly suggest that someone had accessed the hidden compartment. While an untrained person may not find these facts suspicious, Trooper Dollar's training and experience led him to suspect illegal activity.

The alteration of the emblems to make the car appear to be a Ford also indicates criminal behavior. We can not imagine any innocent reason for altering the appearance of the car to look like a Ford, but a drug trafficker might change the emblems if he was aware that the Mercury Grand Marquis was a known drug-trafficking car. Probable cause may be based upon the lack of a legitimate or logical explanation for unusual activity. *United States v. Alexander*, 559 F.2d 1339, 1343 (5th Cir. 1977). The replacement of the windshield, combined with the alteration of the emblems on the car, and Trooper Dollar's observation that Appellant and his passenger were acting suspiciously, lead us to conclude that DPS had probable cause to search Appellant's vehicle.[2]

### III. CONCLUSION

Because we find that Trooper Dollar had probable cause to believe that Appellant's vehicle contained contraband at the time of the search, we AFFIRM

---

[2] Because we find that DPS had probable cause to search Appellant's vehicle, we do not reach the Government's argument that Trooper Dollar had an objectively reasonable, good faith belief that Appellant voluntarily consented to search. *See e.g., United States v. Williams*, 622 F.2d 830, 844–46 (5th Cir. 1980) (en banc) (per curiam) (discussing the good faith exception to the exclusionary rule). We are concerned that DPS chooses to use the word "*registrar*" when asking for consent to search. While "*registrar*" is technically a correct interpretation of "search," it has potential to be very confusing. This is especially true in the context of a vehicle stop, because "*registrar*" is more commonly interpreted as "to register." We are troubled by the Government's position that a law enforcement officer may rely on this potentially confusing term to uphold a search of a Spanish speaker's property.

No. 09-10465

Appellant's conviction.

AFFIRMED.