**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**

October 31, 2011

No. 11-50136
Summary Calendar

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

FRANCELIA ARAGON GALINDO,

Defendant-Appellant

Appeal from the United States District Court
for the Western District of Texas
USDC No. 4:10-CR-169-2

Before WIENER, STEWART, and HAYNES, Circuit Judges.

PER CURIAM:[*]

Defendant-Appellant Francelia Aragon Galindo (Galindo) appeals her conditional guilty plea conviction for possession of 100 kilograms or more of marijuana with intent to distribute. She contends that the district court erred by denying her motion to suppress the marijuana seized after the second of two traffic stops of her and her co-defendant, Deonde Ramont Crawford, in Big Bend National Park (Big Bend). She asserts that the length of her detention during the first traffic stop was unreasonable and excessive in violation of the Fourth

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Amendment. She insists that the law enforcement officers who detained her did not diligently pursue the means of investigation that would confirm or dispel their suspicions because they did not request a K-9 unit until she had already been detained for 45 minutes.

We review factual findings made by a district court on a motion to suppress for clear error and the district court's ultimate conclusions on Fourth Amendment issues de novo. *United States v. Pack*, 612 F.3d 341, 347 (5th Cir.), *opinion modified on denial of reh'g*, 622 F.3d 383 (5th Cir.), *cert. denied*, 131 S. Ct. 620 (2010). We view the evidence in the light most favorable to the prevailing party, in this case, the government. *See id.*

For Fourth Amendment purposes, a vehicle is seized when it is stopped and its occupants are detained. *United States v. Brigham*, 382 F.3d 500, 506 (5th Cir. 2004) (en banc). The legality of police investigatory stops is tested in two steps. *Pack*, 612 F.3d at 349-50 (citing *Terry v. Ohio*, 392 U.S. 1, 19–20 (1968)*, and *Brigham*, 382 F.3d at 506). First, we examine whether the officer's action was justified at its inception. If we conclude that the action was justified, we then inquire whether the officer's subsequent actions were reasonably related in scope to the circumstances that justified the stop. *Id.* at 350. "An officer's subsequent actions are not reasonably related in scope to the circumstances that caused him to stop the vehicle if he detains its occupants beyond the time needed to investigate the circumstances that caused the stop, unless he develops reasonable suspicion of additional criminal activity in the meantime." *Id.* In such an instance, he may further detain its occupants "for a reasonable time while appropriately attempting to dispel this reasonable suspicion." *Id.*

The testimony at the instant suppression hearing showed that Crawford and Galindo were initially stopped for speeding and not having a park permit. And, Galindo has not challenged the propriety of the initial stop. *See United States v. Khanalizadeh*, 493 F.3d 479, 482 (5th Cir. 2007). The park ranger who stopped Crawford and Galindo then requested that Crawford produce a driver's

license, registration for the vehicle, and proof of insurance. The park ranger was lawfully permitted to do this as part of the traffic stop. *See United States v. Zavala*, 541 F.3d 562, 576 (5th Cir. 2008).

By the time the computer checks on Crawford's license and registration had been completed, Big Bend Chief Park Ranger Allen "Speed" Etheridge and the other law enforcement officers on the scene had a reasonable suspicion of additional criminal activity based on the following observations and information: (1) the earlier notice from other park rangers indicated that the pickup Crawford was driving had been traveling from the area of the Mexican border and that the occupants of the pickup had behaved suspiciously; (2) Crawford had a Kansas driver's license but the pickup was registered in his name in Texas; (3) Crawford was not able to provide proof of insurance even though the pickup had been registered only two weeks earlier; (4) recent intelligence bulletins indicated that drivers and vehicles from Kansas had been smuggling drugs across the Mexican border; (5) Crawford was driving with a suspended license; (6) the cab of the pickup was a different shade of red than the back end of the pickup, permitting the inference that two vehicles might have been merged into one; and (7) there were markings on the exterior of the pickup from overgrown vegetation of a variety located near the Mexican border. As Chief Etheridge and the other law enforcement officers had reasonable suspicion of criminal activity beyond the traffic violations, the continued detention of Crawford and Galindo at that time was lawful. *See Pack*, 612 F.3d at 350.

Before Chief Etheridge could further investigate the additional criminal activity, Crawford asked to use the restroom. Prior to taking Crawford to the restroom, Chief Etheridge conducted a pat-down search of Crawford. Given the reasons Chief Etheridge had to suspect additional criminal activity, the pat-down search was lawful. *See United States v. Wangler*, 987 F.2d 228, 230-31 (5th Cir. 1993). During the pat-down, Chief Etheridge found a plastic bag with a white powder in it. After escorting Crawford to the restroom, Chief Etheridge

lawfully extended the detention of Crawford and Galindo by taking reasonable efforts to dispel his suspicion that Crawford was carrying cocaine by finding a cocaine field test kit. *See Pack*, 612 F.3d at 350.

After a field test kit was found, Chief Etheridge asked Crawford for permission to search the pickup, and Crawford consented. As Crawford and Galindo were still being lawfully detained when Crawford consented to the search of the pickup, the search of the pickup did not unlawfully extend their detention. *See United States v. Shabazz*, 993 F.2d 431, 437-38 (5th Cir. 1993). After Chief Etheridge and the other law enforcement officers searched the pickup, they requested a K-9 unit.

Even though the detention lasted for approximately 45 minutes before the K-9 unit was requested, much of this time was spent taking Crawford to the restroom and performing the consensual search of the pickup. Galindo asserts that the K-9 unit could have been requested earlier, but the evidence shows that Chief Etheridge and the other law enforcement officers would not have known that a K-9 unit was necessary until they searched the pickup and found that its bed showed signs of tampering. *See Brigham*, 382 F.3d at 511-12. As Chief Etheridge and the other law enforcement officers were properly investigating the reasonable suspicion that additional criminal activity was occurring up until the time that they requested the K-9 unit, that portion of the traffic stop was not improper. *See Pack*, 612 F.3d at 350.

Galindo does not challenge any part of the traffic stop that led to the discovery of the marijuana and her arrest that occurred after the K-9 unit was requested. Accordingly, she has waived any such challenge that she could have raised. *See United States v. Fagan*, 821 F.2d 1002, 1015 n.9 (5th Cir. 1987). As Galindo has not shown that her detention was unreasonably long or that the district court erred by denying her motion to suppress, we do not reach the government's alternative contentions that Crawford's consent to the searches

cured any illegal detention and that no evidence was seized as a result of an illegal detention.

AFFIRMED.