# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

—————

No. 17-50802

—————

United States Court of Appeals
Fifth Circuit

**FILED**

February 14, 2019

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

      Plaintiff - Appellee

v.

EDUARDO NAJERA,

      Defendant - Appellant

———————————

Appeal from the United States District Court
for the Western District of Texas

———————————

Before JOLLY, DENNIS, and HIGGINSON, Circuit Judges.

STEPHEN A. HIGGINSON, Circuit Judge:

This appeal challenges two sentencing decisions: a recklessness enhancement and a denial of reduction for acceptance of responsibility. On the first issue, we affirm. On the second, we vacate and remand.

## Background[1]

### I.    Factual History

On March 20, 2016, U.S. Border Patrol agent Giovanni Wardlaw was driving southbound near Brackettville, Texas on the lookout for suspicious vehicles. Based on his experience as a border patrol agent, Wardlaw knew that

---

[1] These are the facts as presented at the suppression hearing. They are undisputed in this appeal.

the road he was on, FM 674, is often used to smuggle undocumented immigrants. But Wardlaw also knew that because FM 674 is the only road leading to the Kickapoo State Park, at least some travel on the road is innocuous.

When Wardlaw was approximately 46 miles south of Brackettville, he observed a black SUV on the other side of the road heading north. According to Wardlaw, "The driver appeared nervous, clinching the steering wheel." The driver "glance[d] at [Wardlaw], then looked straight ahead . . . ." Wardlaw observed that the driver appeared surprised to see him. Wardlaw could also see that the vehicle was "sagging a little bit" in the rear and that the driver was "[l]ooking to see if [the patrol car was] still behind him." Wardlaw could not see whether there were any other bodies inside the vehicle.

After approximately ten minutes, the SUV swerved three times, which indicated to Wardlaw that the driver was looking for a place to bail off the road. Wardlaw activated his emergency lights and siren. The vehicle continued for a few moments and then turned sharply onto a gravel road that led up to a gate. Wardlaw observed the vehicle trying to go through the gate and then stopping. Next, Wardlaw saw five individuals quickly exit the vehicle and jump the fence.

Wardlaw called for backup and started running after the individuals who had fled. Then he noticed that the driver was still sitting in the SUV, so Wardlaw went back and asked him who he had been driving. The driver, defendant Eduardo Najera, said he did not know.

Other agents arrived and located two of the five individuals who had fled. They were identified as unlawfully present in the United States and taken into

custody. One of the individuals, Raul Galvan-Arzola (Galvan), became a material witness in Najera's case.

Ultimately, Najera was placed under arrest for transporting undocumented immigrants.

## II.   Procedural History

Najera was charged with conspiring to transport undocumented immigrants and with transporting undocumented immigrants, in violation of 8 U.S.C. §§ 1324(a)(1)(A)(ii), (A)(v)(I), and (B)(i).

In a video deposition, Galvan explained that he had paid an individual in Mexico to help him enter the United States. Galvan described the group's Rio Grande river crossing as a difficult part of the journey because their guide, José, had attempted to lead them across a part of the river that was very deep and some of the immigrants almost drowned. Galvan explained that they made it across after José solicited help from a local Mexican man named El Guero. Najera was not present for the river crossing; he picked up the immigrants when they reached the highway.

Through counsel, Najera moved to suppress all evidence seized as a result of the traffic stop—including Galvan's testimony—on the grounds that Wardlaw lacked reasonable suspicion. Najera also requested an evidentiary hearing on the matter. The district court granted the hearing and afterwards denied the motion, concluding that Najera's Fourth Amendment rights had not been violated. The parties dispute whether this suppression challenge was factual or legal.

There is no dispute that Najera wanted to appeal the adverse ruling. To do that, Najera requested that the Government consent to a conditional guilty plea under Federal Rule of Criminal Procedure 11(a)(2), which would have allowed Najera to appeal the denial of his motion to suppress but otherwise admit all guilt. For reasons unknown, the Government refused to accept a

conditional plea.[2]  So the parties proceeded to a bench trial.

At the bench trial, the following exchange took place:

**AUSA KEAGLE:** Judge, while this is titled "Stipulated Bench Trial," . . . [i]t appears – it's not quite as stipulated as the term may sound.
**THE COURT:** It's not stipulated at all, actually.
**AUSA KEAGLE:** And – and that's kind of where we're at at this point, Judge. However, they're – they're not really contesting the facts, they're just trying to preserve their right to appeal.

After the district court expressed surprise that the Government would not agree to a conditional plea ("I don't understand why your office believes that there is a protection for the government in not agreeing to a – a conditional plea of guilty"), the district court emphasized, "[T]he bottom line is . . . it's not really stipulated as to the facts, then."

The Government then stated its intent to present its case through two exhibits—the transcript of the suppression hearing and Galvan's videotaped deposition—which the Government suggested could be heard "offline" by the court. But the court disagreed, explaining, "It is evidence in a trial. This gentleman has a right to confront all of the evidence." The court added, "[T]he other thing is, if I'm reading a transcript of the depositions or I'm looking at the video, even if it's outside of court, . . . it's not an acceptance of responsibility situation." As the Government expressed understanding, the court remarked again, "I don't understand why your office would go through all of this and not do a conditional plea."

When trial began, the Government gave a brief opening statement summarizing the facts laid out above. When the court asked whether Najera had an opening statement, Najera's counsel said, "Waive, Your Honor." The

---

[2] At oral argument, the Government offered no explanation for this decision other than that it is entirely discretionary.

Government then offered its first exhibit, the transcript of the hearing on the motion to suppress. Najera's counsel objected "only for [the] sake of preserving the record . . . based on the fact that the stop . . . was unlawful . . . ." Next, the Government presented its second exhibit, the videotaped deposition of Galvan. Najera objected pursuant to the fruit-of-the-poisonous-tree doctrine.

After the Government played Galvan's hour-long video deposition, the Government rested. The court asked Najera's counsel, "Any evidence by the defense?" and Najera's counsel responded, "No, Your Honor." The Government offered a three-sentence closing argument and Najera's counsel declined to offer any. Evidence was then closed. Immediately thereafter, the district court found Najera guilty of both charged offenses.

A probation officer used the 2016 U.S. Sentencing Guidelines (USSG) to prepare Najera's presentence report (PSR). Najera's base offense level was 12. Because he had committed this offense after a conviction for a felony immigration offense, his base offense level was increased by 2 levels. Neither party disputes those components of the Guidelines calculation.

The two issues on appeal are: (1) an enhancement under USSG §2L1.1(b)(6) for "intentionally or recklessly creating a substantial risk of death or serious bodily injury to another person" and (2) a denial of a reduction for acceptance of responsibility (AOR) pursuant to USSG §3E1.1. Najera did not appeal the denial of his Fourth Amendment motion.

With respect to the recklessness enhancement, the PSR explains, "The material witness stated in his video deposition that when he and 4 other individuals first attempted to cross into the United States, they almost drowned."

Under "Acceptance of Responsibility," the PSR explains that the probation officer conducted an interview with Najera in which Najera reflected that he "regrets every moment" of the offense. The report states that Najera

"is very remorseful." Nevertheless, the report concludes:

> The defendant had a bench trial and filed a Motion to Suppress alleging there was no reasonable suspicion on the agent's part to conduct the traffic stop. As evidenced by the Motion to Suppress, the defendant contested the validity of the facts of the case; therefore, the defendant does not qualify for a downward adjustment for acceptance of responsibility.

The district court adopted the legal and factual findings from the PSR, overruling Najera's objections to the recklessness enhancement and denial of an AOR reduction. After considering the advisory Guidelines range of 41 to 51 months imprisonment and the § 3553(a) sentencing factors, the district court sentenced Najera to 48 months on each count, to run concurrently.

## Analysis

### I.  Recklessness Enhancement Under USSG §2L1.1(b)(6)
#### a.  Standard of Review

We review the district court's interpretation or application of the Guidelines *de novo* and its factual findings for clear error. *United States v. Cisneros-Gutierrez*, 517 F.3d 751, 764 (5th Cir. 2008). There is no clear error if a factual finding is plausible in light of the record as a whole. *United States v. Rodriguez*, 630 F.3d 377, 380 (5th Cir. 2011). We "will not conclude that a district court's finding of fact was clearly erroneous based only on our belief that had we been sitting as the trier of fact, we would have weighed the evidence differently and made a different finding." *Id.* (internal quotation marks and citation omitted). And we must "look at the specifics of the situation." *United States v. Mateo Garza*, 541 F.3d 290, 294 (5th Cir. 2008). "[W]e will not create . . . *per se* rules." *Id.* (citing *United States v. Solis-Garcia*, 420 F.3d 511, 516 (5th Cir. 2005)) (explaining that "our caselaw does not

support establishing a *per se* rule that traveling through the South Texas brush creates a 'substantial risk of death or bodily injury'").

### b. Analysis

USSG §2L1.1(b)(6) significantly enhances the offense level of a defendant convicted of smuggling if "the offense involved intentionally or recklessly creating a substantial risk of death or serious bodily injury to another person." As Najera implicitly concedes, he can be held responsible for "all acts and omissions of others that were . . . within the scope of the jointly undertaken criminal activity, in furtherance of that criminal activity, and reasonably foreseeable in connection with that criminal activity." USSG §1B1.3(a)(1)(B).

The crux of Najera's argument is that no co-conspirator *created* a risk of death or injury. According to Najera, the relevant co-conspirator, José, only acted to *diminish* a risk that the group encountered (i.e., the deep water of the Rio Grande) by seeking help from El Guero.

But José did more than that. According to Galvan's uncontroverted testimony, José "took [the group] to a place where it was deep," which prompted one of the immigrants to confront José later with the question, "Why did you cross us if you knew we were almost drowning?"

With that evidence about José's conduct and mens rea in the record, we discern no error in the district court's factual finding and legal conclusion that José consciously disregarded a substantial and unjustifiable risk, meriting application of the recklessness enhancement to Najera's sentence.

## II.  Denial of USSG §3E1.1 Acceptance of Responsibility Reduction
### a.  Standard of Review

A district court's refusal to reduce a sentence for acceptance of responsibility is reviewed under a standard "even more deferential than a pure clearly erroneous standard." *United States v. Maldonado*, 42 F.3d 906, 913 (5th

Cir. 1995) (quotation omitted). Such a decision will not be reversed unless it is "without foundation." *Id.* (quotation omitted).

### b. Analysis

USSG §3E1.1 reduces a defendant's offense level by two levels if the defendant "clearly demonstrates acceptance of responsibility for his offense." A comment to the section explains:

> This adjustment is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse. Conviction by trial, however, does not automatically preclude a defendant from consideration for such a reduction. In rare situations a defendant may clearly demonstrate an acceptance of responsibility for his criminal conduct even though he exercises his constitutional right to a trial. This may occur, for example, where a defendant goes to trial to assert and preserve issues that do not relate to factual guilt (e.g., to make a constitutional challenge to a statute or a challenge to the applicability of a statute to his conduct). In each such instance, however, a determination that a defendant has accepted responsibility will be based primarily upon pre-trial statements and conduct.

USSG §3E1.1(a) cmt. 2.

In *United States v. Washington*, we announced protection of access to the AOR reduction for defendants who pursue a motion to suppress. 340 F.3d 222, 228 (5th Cir. 2003) (holding that pursuing a suppression issue "does not negate a willingness to accept responsibility under the Guidelines"). In that case, defendant Tony Ray Washington confessed to being a felon in possession of a firearm and moved to suppress evidence seized following a "no-knock" entry. *Id.* at 225. The district court denied his motion and the Government refused a conditional plea, so Washington proceeded to a bench trial based on a written stipulation of all evidence necessary for conviction. *Id.* at 225, 228. The district

court found him guilty and denied an AOR reduction. *Id.* We reversed on the AOR issue.

*Washington* stresses the difference between "denial of factual guilt and denial of legal guilt," explaining that the Guidelines "allow[] acceptance of responsibility for the latter." *Id.* at 229. We reiterated, "A challenge to the legality of the police conduct is completely separate from a challenge to the factual elements of a defendant's conduct. [A defendant] should not have to waive appeal of a constitutional issue in order to receive a sentence reduction for acceptance of responsibility." *Id.* at 229-30. We emphasized that holding otherwise could "chill the filing of suppression motions by defendants who admit their factual guilt," which would be problematic because "[s]uppression hearings play a vital role in not only protecting the rights of the particular defendant, but also in protecting society from overzealous law enforcement ignoring proper procedure." *Id.* at 230.

Like Washington, Najera did not contest the factual predicate for the allegedly unconstitutional stop; instead, he argued that the facts were legally insufficient to give rise to reasonable suspicion. For example, Najera never contradicted Wardlaw's description of Najera "driving while holding the steering wheel strongly, staring straight ahead" but rather argued that such behavior was "very innocuous."

The key distinction between *Washington* and the instant case is that Washington stipulated to all the facts necessary for his conviction before trial, whereas Najera did not. At issue is whether that supplies foundation for a different outcome.[3]

To answer that question, we must consider *United States v. Garcia-Ruiz*, a decision published five years after *Washington*. 546 F.3d 716 (5th Cir. 2008).

---

[3] The government cites *United States v. Cordero*, 465 F.3d 626, 632 (5th Cir. 2006) for the proposition that the AOR reduction is not intended to apply to a defendant who puts the

In that case, the defendant appealed the denial of his motion to suppress after proceeding through a bench trial on stipulated facts. *Id.* at 718. When this court turned to the suppression issue, we stated, "We need not decide whether the court erred . . . because, even if, *arguendo*, the district court erred in its [suppression] ruling, the error is rendered harmless by the fact that Garcia-Ruiz stipulated to facts that easily established his conviction beyond a reasonable doubt, as the district court found." *Id.* at 718. We further explained:

> With such stipulations in place, any decision by this court regarding the suppression hearing could not affect Garcia-Ruiz's posture in the district court, because he stipulated to the elements needed for conviction. Thus, when Garcia-Ruiz and the government agreed to the stipulated facts that established all the elements of the offense, any error on the suppression issue would have no effect on the legal soundness of the conviction. In other words, to establish Garcia-Ruiz's guilt, the government no longer needed the evidence he claims should have been suppressed.

*Id.* In the alternative, we added, "Garcia-Ruiz's decision to go to trial on stipulated facts can be viewed as waiver . . . ." *Id.*

Were that the extent of the *Garcia-Ruiz* holding, the *Washington* protection would be rendered problematically inaccessible to defendants who face Government opposition, on any ground, to a conditional guilty plea and seek to appeal a suppression ruling. But *Garcia-Ruiz* contains a safety hatch: if a defendant "reserve[s] such a right to appeal when he stipulate[s] to the

---

Government to its burden of proof at trial. *Cordero* is distinguishable for two reasons. First, the *Cordero* defendant had *rejected* a conditional plea of guilty, *id.*, whereas Najera sought one. Second, in *Cordero*, the defendant moved for a judgment of acquittal at the end of the trial, *id.*, whereas Najera took no action at trial except to preserve his Fourth Amendment objection.

facts" necessary for his conviction, the harmlessness and waiver rules above do not apply. *Id.* at 719.

Najera's concern that admitting or stipulating would have rendered his suppression appeal either harmless or waived overlooked *Garcia-Ruiz*'s protection for defendants who expressly reserve their right to appeal. We therefore take the opportunity to clarify the following: a defendant who proceeds to trial on an admission or a stipulation of the facts necessary for conviction *while expressly reserving the right to appeal from an adverse suppression ruling* will not be deemed to have waived the suppression issue, nor will the admission or stipulation render the suppression issue harmless, and that defendant remains eligible for an AOR reduction.

Had Najera taken that specific route, he would have undoubtedly preserved the suppression issue and remained eligible for the AOR reduction. That is the most precise approach to take. But on the unique facts of this case, we conclude that it is the functional equivalent of what Najera did. He sought a conditional guilty plea and when the Government refused it, he stood silent at trial except to preserve his Fourth Amendment objection. The PSR noted that he was "very remorseful." And the record suggests that the only reason he did not stipulate was because he was concerned, rightly or wrongly, that *Garcia-Ruiz* would cause such stipulation to waive the suppression issue or render it harmless. Every action Najera took was designed to concede factual guilt while challenging the constitutionality of his search and seizure. Thus, Najera clearly demonstrated acceptance of responsibility and did not deny the

factual elements of guilt. The district court's conclusion otherwise must be reversed.

Because Najera's situation was unique in its attempt to adhere to *Garcia-Ruiz*, we trust that it may be avoided in the future with our highlighting of the *Garcia-Ruiz* safety hatch.

The sentence is vacated, and the case is remanded to the district court for resentencing consistent with this opinion.

AFFIRMED IN PART; VACATED AND REMANDED IN PART.