# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

October 5, 2023

Lyle W. Cayce
Clerk

No. 22-30752

Cedric Otkins, Jr.,

*Plaintiff—Appellant*,

*versus*

Jack Gilboy, *Sergeant*; Barrett Pearse, *Officer*; William Roth, *Officer*; Joshua Deroche, *Officer*; Unidentified Parties,

*Defendants—Appellees*.

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:21-CV-1275

Before Higginbotham, Smith, and Elrod, *Circuit Judges*.

Per Curiam:[*]

This case arises out of the arrest of Cedric Otkins, Jr. Following his arrest, Otkins brought a civil rights action under 42 U.S.C. § 1983 against the officers who participated in his detention and the search of his vehicle. The officers asserted qualified immunity and moved for summary judgment, which the district court granted. Finding that a genuine issue of material fact

---

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 22-30752

precludes summary judgment as to Sergeant Jack Gilboy, we VACATE and REMAND. However, we AFFIRM the district court's order as it relates to the remaining defendants.

I

In July 2020, Otkins parked his car in the parking lot of the East Bank Bridge Park after it had closed, violating St. Charles Parish Ordinance Section 17-2. Spotting Otkins's car, Sergeant Jack Gilboy of the St. Charles Parish Sheriff's Office pulled his patrol SUV behind Otkins's vehicle to investigate. Conflicting testimony exists as to what happened next.[1] Sergeant Gilboy testified that, as he approached Otkins' closing car door, the odor of marijuana "fann[ed]" towards him. Otkins, however, maintains that Sergeant Gilboy approached Otkins while he waited at the back of his vehicle, after the door closed. Otkins claims that, because his doors and windows were closed, Gilboy could not have detected marijuana.

Sergeant Gilboy then retrieved Otkins's driver's license, conducted a computer check, and found an outstanding attachment for Otkins's arrest. Gilboy then called for backup and requested a canine unit, ostensibly because he smelled marijuana near Otkins's vehicle. Officers William Roth and Barrett Pearse arrived several minutes later, followed by Officer Joshua Deroche with a drug-detecting dog. Following an alert from the dog, officers searched the vehicle and found approximately twenty grams of marijuana in Otkins's trunk, along with a glass smoking pipe, a digital scale, and a grinder.

The officers then arrested Otkins. Although exact estimates vary, all parties agree that Otkins was arrested less than an hour after the stop began.

---

[1] No footage exists of Sergeant Gilboy's initial encounter with Otkins. Sergeant Gilboy activated his dashcam footage when other officers arrived on scene, after their initial encounter concluded.

Otkins was charged under Louisiana law for drug possession, but his charges were ultimately dismissed.

Otkins brought a civil rights action under 42 U.S.C. § 1983 against the officers who participated in the detention and search. He alleges that the officers violated his Fourth Amendment right to be free from unlawful searches and seizures. The officers moved for summary judgment on qualified immunity, which the district court granted. Otkins appeals.

## II

"We review a district court's grant of summary judgment de novo, applying the same standards as the district court." *DeVoss v. Sw. Airlines Co.*, 903 F.3d 487, 490 (5th Cir. 2018) (citation and quotation marks omitted). Summary judgment is appropriate only when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party. *Poole v. City of Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012). A dispute of fact is "material" if its resolution would affect the outcome of the case. *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000).

"In reviewing the district court's summary judgment decision, we must consider the evidence in the record in the light most favorable to [Otkins], drawing all reasonable inferences in support of the conclusion that [he] has raised a jury issue on his claims." *Boyd v. McNamara*, 74 F.4th 662, 665 (5th Cir. 2023).

## III

To prevail, Otkins must overcome the officers' qualified immunity defense, which "includes two inquiries. The first question is whether the

officer violated a constitutional right.  The second question is whether the right at issue was clearly established at the time of the alleged misconduct." *Morrow v. Meachum*, 917 F.3d 870, 874 (5th Cir. 2019) (quotation omitted). "We can decide one question or both." *Id.* Here, the district court decided only the first issue, and concluded that no genuine issues of material fact precluded summary judgment.  As to Sergeant Gilboy, we disagree.

The protection of the Fourth Amendment "extends to vehicle stops and temporary detainment of a vehicle's occupants." *United States v. Andres*, 703 F.3d 828, 832 (5th Cir. 2013).  After lawfully stopping a driver for a traffic violation, an officer's actions must be "reasonably related in scope to the circumstances that justified the stop of the vehicle in the first place." *Id.* (quoting *United States v. Macias*, 658 F.3d 509, 517 (5th Cir. 2011)).  The stop may last no longer than necessary to address the traffic violation, and constitutional authority for the seizure "ends when tasks tied to the traffic infraction are—or reasonably should have been—completed." *Rodriguez v. United States*, 575 U.S. 348, 354 (2015).  During a traffic stop, an officer may permissibly check the driver's license, determine whether there are outstanding warrants against the driver, and inspect the automobile's registration and proof of insurance. *Id.* at 355 (citing *Delaware v. Prouse*, 440 U.S. 648, 658-60 (1979)).

The Fourth Amendment, however, tolerates additional investigation unrelated to the safe and responsible operation of the vehicle if that investigation is supported by reasonable suspicion of additional criminal activity. *Id.* at 354-55, 358.  If the officer develops reasonable suspicion of such activity "in the course of the stop and before the initial purpose of the stop has been fulfilled, then the detention may continue until the new reasonable suspicion has been dispelled or confirmed." *United States v. Banuelos-Romero*, 597 F.3d 763, 767 (5th Cir. 2010) (quoting *United States v. Lopez-Moreno*, 420 F.3d 420, 431 (5th Cir. 2005)).  The smell of marijuana

emanating from a vehicle may give officers reasonable suspicion to extend the detention and probable cause to search the vehicle. *United States v. Conley*, No. 22-30037, 2023 WL 2327457, at \*3 (5th Cir. Mar. 2, 2023) (per curiam) (unpublished) ("When Trooper Langley smelled the odor of marijuana, he developed the necessary reasonable suspicion of additional criminal activity to extend the detention beyond the time it took to investigate Conley's traffic offense."); *United States v. Garcia*, 592 F.2d 259, 260 (5th Cir. 1979) (per curiam) (holding that reasonable suspicion "was supplied by the smell of the marijuana").

## A

We first address the district court's grant of summary judgment as to Sergeant Gilboy. The parties agree that the initial stop was lawful, but disagree on whether Sergeant Gilboy could have smelled marijuana, and thus, whether the subsequent detention was lawful. The district court concluded that Sergeant Gilboy had reasonable suspicion to extend the detention, relying on his testimony that he smelled marijuana. Otkins, however, contends there are genuine issues of material fact that call into question whether Sergeant Gilboy could have smelled marijuana. Specifically, he argues that there are issues concerning the timing of Otkins's and Sergeant Gilboy's exits from their vehicles, the manner of storage and location of the marijuana, and Sergeant Gilboy's "inability to specify" whether the marijuana was raw or burnt. The district court concluded that these disputes were immaterial. We do not.

Both parties agree that Otkins exited his car first. They also agree that Sergeant Gilboy was parked approximately fifteen feet behind Otkins. From there, the testimony differs. Sergeant Gilboy testified that he "smelled the odor of marijuana coming from the vehicle" when he was "three or four

feet" from it.  He further explained that the odor "fann[ed]" towards him when Otkins closed his car door.

Otkins, however, offered evidence that he exited his car and waited near the trunk, with his door and windows fully closed, for Sergeant Gilboy to approach.  Under this version of the facts, Sergeant Gilboy was much farther than "three or four feet" from the Otkins's closing door.  Otkins also points out the improbable timeline to which Sergeant Gilboy testified.  Gilboy testified that Otkins opened his door first, and that it took Otkins "[a]pproximately two seconds" to close it.  In essence, then, Gilboy's testimony is that he opened his door, closed it, and covered the fifteen feet between them within the two seconds it took Otkins to close his door, to be in a position to smell the "fann[ed]" odor.

Taking the facts in the light most favorable to Otkins, Sergeant Gilboy was up to fifteen feet away from the car door when it closed, not three.  We agree with the district court that the dueling accounts alter the timeline by only a few seconds.  We conclude, however, that this distinction presents a genuine issue of material fact.  A reasonable jury could conclude that Sergeant Gilboy could not have smelled the odor of marijuana "fanning" from a distance farther than three feet, and accordingly, that he lacked reasonable suspicion to further detain Otkins.  Summary judgment was thus improper as to Sergeant Gilboy.[2]  *See Hayter v. City of Mount Vernon*, 154 F.3d 269, 274-75 (5th Cir. 1998) (affirming denial of summary judgment for

---

[2] The parties agree that prolonging an otherwise completed detention to conduct a dog sniff, absent reasonable suspicion, violates the Fourth Amendment.  *See Rodriguez v. United States*, 575 U.S. 348, 350 (2015) (holding that police may not extend an otherwise completed traffic stop, in order to conduct a dog sniff, absent reasonable suspicion). Because there is a fact issue regarding reasonable suspicion for the dog sniff here, however, we cannot say whether Sergeant Gilboy's actions violated a clearly established right, and we must remand.

qualified immunity where fact issues remained regarding whether officers smelled marijuana).

B

We now turn to the responding officers. The district court concluded that qualified immunity applied to Officers Pearse, Roth, and Deroche, because Sergeant Gilboy, in its view, smelled marijuana and had reasonable suspicion to prolong the detention.

Whether Sergeant Gilboy smelled marijuana, standing alone, is not dispositive of the lawfulness of the other officers' action, as the district court suggested. Rather, the proper inquiry where an officer acts on the oral statements of another officer is whether "it was objectively reasonable for him to believe, on the basis of the statements," that he had a sufficient basis for his actions. *Deville v. Marcantel*, 567 F.3d 156, 166 (5th Cir. 2009) (alteration omitted) (quoting *Rogers v. Powell*, 120 F.3d 446, 455 (3d Cir. 1997)). In other words, Officers Pearse, Roth, and Deroche are entitled to qualified immunity if they "reasonably believe[d]" Sergeant Gilboy's statement that he smelled marijuana. *Id.*

For example, we held in *Deville* that a responding officer was qualifiedly immune because he "reasonably believe[d]" another officer's oral statements that there was probable cause to arrest. *Id.* at 166-67. There, the evidence showed that the initial officer communicated the reason for the traffic stop to the responding officer, and no evidence showed that the responding officer had a "reason to disbelieve" the statements. *Id.* Accordingly, we affirmed summary judgment as to the responding officer, even though we reversed as to the initial officer, because fact issues called into question whether he, in fact, had probable cause. *Id.* at 166.

So too here. The record reveals that Sergeant Gilboy communicated to the responding officers over the radio that he smelled marijuana when he

requested backup, and nothing in the record indicates that Pearse, Roth, or Deroche had any reason to doubt the veracity of Sergeant Gilboy's statement. Otkins suggests that racial animosity played a role in the detention and created circumstances "conducive to lying." Simply put, Otkins's race has no bearing on whether Pearse, Roth, and Deroche reasonably believed Sergeant Gilboy's statement that he smelled marijuana—which he made over the radio, well before the responding officers knew Otkins's race.[3] Otkins also offers excerpts from the officers' discussion before arresting Otkins, but this too says nothing about whether they "had a reason to disbelieve" the "account of criminal activity from a seemingly reliable witnessing officer." *Deville*, 567 F.3d at 167. The cited exchange concerns only the pending arrest, and does not reveal their views on Sergeant Gilboy's statement.

Because Otkins has not identified a genuine issue of material fact regarding the reasonable believability of Sergeant Gilboy's statement, summary judgment was proper as to these defendants.

## IV

Having determined that genuine issues of material fact preclude summary judgment for qualified immunity as to Sergeant Jack Gilboy, we VACATE the district court's order granting defendants' motion for summary judgment as to him, and REMAND to the district court.

---

[3] For example, Otkins suggests that Roth's use of the term "brother" when speaking to him was a "micro-aggression," charged with racial connotations. Regardless of that term's meaning, Roth's use of it says nothing about whether he reasonably believed Gilboy's radio call that he smelled marijuana.

No. 22-30752

However, we AFFIRM the order granting summary judgment as it relates to Officers Barrett Pearse, William Roth, and Joshua Deroche.[4]

---

[4] Several unidentified persons appear on the caption as "Unidentified Parties." The district court granted final judgment in favor of these unidentified parties. The appellate briefing, however, does not address these parties. Therefore, we do not consider that part of the judgment on appeal.