# United States Court of Appeals for the Fifth Circuit

---

No. 22-50745

---

United States Court of Appeals
Fifth Circuit

**FILED**
January 29, 2024

Lyle W. Cayce
Clerk

United States of America,

*Plaintiff—Appellee*,

*versus*

James Mitchell Phillips,

*Defendant—Appellant*.

---

Appeal from the United States District Court
for the Western District of Texas
USDC No. 7:21-CR-344-1

---

Before Wiener, Willett, and Douglas, *Circuit Judges*.

Per Curiam:[*]

Defendant–Appellant James Mitchell Phillips appeals the district court's denial of his motion to suppress and its refusal to apply the acceptance-of-responsibility reduction to his sentence. For the reasons below, we AFFIRM.

---

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 22-50745

I

After the Upton County Sheriff's Office dispatched a deputy to investigate an erratic driver, the responding officer quickly identified the vehicle: A speeding white truck, driven by Phillips, weaving in and out of lanes and crossing over the road's shoulder. The deputy triggered his lights to get Phillips's attention, but Phillips continued driving unphased. In response, the deputy activated his siren and positioned the patrol car alongside the moving truck. Phillips took note of this maneuver and slowed down, eventually parking his truck on the shoulder, where the deputy could conduct a traffic stop.

The deputy approached the truck and requested that Phillips exit the vehicle. As Phillips opened the driver-side door to comply, the deputy observed a cold beer can wedged inside the door's interior. Phillips acknowledged the beer but explained it was his "first one." The deputy continued conversing with Phillips, explaining that he had concerns about Phillips's sobriety and erratic driving. Phillips responded nervously. When asked where he was traveling, for example, Phillips explained that he was trying to "round up some money" because of a "financial hitch [that] morning"; he called himself a "dumb ass" and began talking about a 30-day loan. He also made conflicting statements about where he lived, whether he had a job, and whether he was able to use his phone.

The deputy asked Phillips for consent to search the truck. Phillips refused but permitted the deputy to open the vehicle's rear door. After the deputy did so, he surveyed the back seat and observed nothing except scattered tools and strewn objects. The deputy then administered a field sobriety test, which offered mixed results: Although the deputy denied smelling alcohol on Phillips, Phillips was unable to keep his head still as the deputy requested.

Ultimately, Phillips's performance during the sobriety check failed to assuage the deputy's suspicions. So, to further investigate, the deputy requested a K-9 unit to the scene. In the meantime, the deputy conducted a second field sobriety test and remarked that he saw "a little bit" of involuntary eye jerking—a telltale sign of intoxication. Once the K-9 and his deputy handler arrived, the K-9 sniffed the perimeter of Phillips's truck, but the search revealed nothing. Even without a K-9 alert, the deputies proceeded to search Phillips's truck anyway, and within minutes, found a bottle of methamphetamine in the passenger's seat. The discovery led to Phillips's arrest and his indictment in federal court.

During his subsequent criminal proceedings, Phillips raised concerns about the officers' conduct during the stop. He specifically alleged that the deputies lacked probable cause to search his vehicle and unconstitutionally prolonged the traffic stop to conduct the dog sniff. Phillips moved to suppress the methamphetamine found during the search, but the district court denied the motion, concluding that the officers obtained the evidence lawfully. As for the length and method of detention, the court determined that the officers had reasonable suspicion to prolong the traffic stop and investigate further.

Following the court's ruling, the parties stipulated to the facts necessary for Phillips's conviction, and the district court found Phillips guilty in a bench trial.[1] Even though Phillips never denied the criminal charges, the presentence report (PSR) did not provide for a downward adjustment for acceptance of responsibility when calculating Phillips's sentencing range. The reason was based on a physical altercation between Phillips and another

---

[1] Phillips was convicted of one count of conspiracy to possess with intent to distribute five grams or more of methamphetamine.

inmate while Phillips awaited sentencing. The probation office determined that Phillips was the agitator and escalated the situation to physical violence.

In objecting to the PSR, Phillips countered that he was not the first physical aggressor.[2] Defending himself, he argued, was an inadequate ground to deny the acceptance-of-responsibility reduction. At sentencing, however, the district court overruled Phillips's challenge. In doing so, it declined defense counsel's invitation to review video footage of the fight and instead relied on the probation office's account that Phillips was the initial agitator. The court then sentenced Phillips to 168 months of imprisonment and five years of supervised release. Phillips now appeals that judgment, claiming that the district court committed two errors—one by denying his motion to suppress and the other by refusing to reduce his sentence based on his acceptance of responsibility.

## II

We begin with the motion to suppress. In reviewing the district court's ruling, we view all facts for clear error and in the light most favorable to the prevailing party—in this case, the government. *United States v. Shelton*, 337 F.3d 529, 532 (5th Cir. 2003). We review legal conclusions de novo and uphold the district court's ruling if any rationale in the record supports it. *United States v. Waldrop*, 404 F.3d 365, 368 (5th Cir. 2005).

## A

Phillips first argues that the district court should have suppressed the methamphetamine found during his traffic stop because the deputies obtained it through an unlawful search. Even though Phillips concedes he committed traffic violations and unlawfully possessed an open container of

---

[2] Phillips nevertheless conceded that an oral altercation preceded the fight.

alcohol, he says neither was a valid reason to believe his truck contained contraband. According to Phillips, the deputies improperly relied on their "hunch" that he was intoxicated by something other than alcohol. But Phillips says that hunch was baseless since the sobriety tests and dog sniff revealed nothing suspicious. Although the deputies eventually uncovered illicit drugs, Phillips argues that their search was unjustified from its inception.

Among the protections guaranteed under the Fourth Amendment is the freedom from "unreasonable searches." U.S. Const. amend. IV. The Supreme Court has interpreted this protection as prohibiting warrantless searches, deeming them "*per se* unreasonable." *Katz v. United States*, 389 U.S. 347, 357 (1967). Even so, that well-established precept is not without a few "narrow exceptions." *See United States v. Alvarez*, 40 F.4th 339, 345 (5th Cir. 2022). Numbered among them is the "automobile exception," a carveout from the Fourth Amendment's safeguards, allowing police "to search a vehicle if they have probable cause" to do so. *United States v. Ortiz*, 781 F.3d 221, 229 (5th Cir. 2015) (quoting *United States v. Fields,* 456 F.3d 519, 523 (5th Cir.2006)). In this context, probable cause exists when "trustworthy facts and circumstances within the officer's knowledge . . . would cause a reasonably prudent man to believe the car contains contraband." *United States v. Guzman*, 739 F.3d 241, 246 (5th Cir. 2014) (quoting *United States v. Banuelos-Romero*, 597 F.3d 763, 767 (5th Cir. 2010)).

Making the probable-cause determination requires courts to consider "the totality of the circumstances" rather than isolated factors. *Id.* So whether the deputies had probable cause here turns on what they knew before they searched Phillips's truck. To answer that question, we turn to the record, which provides the following facts: A deputy observed Phillips speeding and driving erratically on a two-lane highway; Phillips failed to

recognize the deputy's initial attempts to pull him over; during the traffic stop, Phillips admitted to consuming alcohol and drinking from the open container inside the vehicle; during sobriety tests, Phillips was unable to follow directions and exhibited slight nystagmus, or eye jerking; and throughout the stop, Phillips made several contradictory statements. Given the totality of these facts, there was a "fair probability" that Phillips was driving while intoxicated. *United States v. Garcia*, 179 F.3d 265, 269 (5th Cir. 1999). Accordingly, the officers had probable cause to search Phillips's vehicle for evidence of his intoxication. *See id.*

To the extent that Phillips disputes the deputy's subjective intent to search for alcohol versus some other illicit substance, that challenge overlooks an essential aspect in our probable-cause inquiry: The operative analysis involves an objective test independent of an officer's subjective belief. *Whren v. United States*, 517 U.S. 806, 813 (1996) ("Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis."). So whether the officers searched Phillips's truck based on the open container or based on their hunch that he was on drugs is irrelevant. *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004) ("Our cases make clear that an arresting officer's state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause."). Nor is it significant that some measures to establish probable cause, like the dog sniff, failed. What matters here is that the deputies had probable cause to search Phillips's vehicle all along. *See United States v. Johns*, 469 U.S. 478, 484 (1985) ("There is no requirement that the warrantless search of a vehicle occur contemporaneously with its lawful seizure.").

B

Having determined that the deputies engaged in a lawful search, we next consider whether the deputies improperly detained Phillips while

conducting that search. In Phillips's view, the dog sniff extended his detention beyond the time needed to conduct the traffic stop and thus constituted an unreasonable seizure. He argues that the deputy should have instead issued an open container citation and finished the investigation following the sobriety test.

Like unlawful searches, the Fourth Amendment also prohibits unwarranted seizures. And, when a seizure occurs during an investigatory stop, we review its legality with the two-part test established in *Terry v. Ohio*, 392 U.S. 1 (1968). The first part of the test asks "whether the stop was justified at its inception"; the second part asks "whether the officer's subsequent actions were reasonably related in scope to the circumstances that caused him to stop the vehicle in the first place." *United States v. Smith*, 952 F.3d 642, 647 (5th Cir. 2020) (internal quotation marks and citation omitted).

Because Phillips does not challenge the traffic stop's justification, we focus only on the second part. The pertinent question, then, is whether the officers' actions after stopping Phillips "were reasonably related to the circumstances that justified the stop, or to dispelling [the officers'] reasonable suspicion developed during the stop." *United States v. Brigham*, 382 F.3d 500, 507 (5th Cir. 2004); *United States v. Brigham*, 382 F.3d 500, 507 (5th Cir. 2004) (en banc).

Here, the purpose of the stop was to investigate whether Phillips was intoxicated. *Brigham*, 382 F.3d at 507. As the investigation unfolded, facts developed that tended to point away from alcohol intoxication and toward drug intoxication. Indeed, given Phillips's conduct detailed above, the deputies were unable to dispel their suspicions after conversing with Phillips and conducting sobriety tests. *See Smith*, 952 F.3d at 647. Continuing the investigation by calling for a dog sniff to search for other substances was thus

reasonable. *Id.*; *see also United States v. Johnson*, No. 22-60080, 2022 WL 13857898, 1 (5th Cir. Oct. 24, 2022) (unpublished) ("Since the officers' testimony shows they had a reasonable suspicion of impaired driving that was not dispelled by their initial questioning of Johnson, we reject Johnson's argument that they unreasonably prolonged the stop.").

As for the time it took for the officers to investigate, there is no legal stopwatch for traffic stops. Instead, whether a detention is unreasonably prolonged turns on "whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly." *Brigham*, 382 F.3d at 511 (quoting *United States v. Sharpe*, 470 U.S. 675, 686 (1985)). Here, the deputy acted diligently by calling for the dog sniff immediately after Phillips refused to consent to a search of his vehicle. *Id.* To the extent that Phillips argues that it was unreasonable to wait twenty-one minutes for the dog to arrive or that the entire forty-minute stop itself was unconstitutionally long, this court has held otherwise. *See United States v. Pack*, 612 F.3d 341, 361–62 (5th Cir. 2010), *opinion modified on denial of reh'g*, 622 F.3d 383 (5th Cir. 2010) (35-minute stop); *United States v. Galindo*, 447 F. App'x 633, 634, 636 (5th Cir. 2011) (45-minute delay before calling for K-9 unit). For these reasons, we reject Phillips's claim that his detention was unreasonably prolonged and conclude that the dog sniff was reasonably related in scope to the purpose of the initial stop.

In sum, because the deputies lawfully searched and detained Phillips, the district court did not err in denying Phillips's motion to suppress.

### III

In his final challenge, Phillips argues that the district court improperly refused to apply the acceptance-of-responsibility reduction when calculating his sentence. When reviewing "[a] district court's refusal to reduce a sentence for acceptance of responsibility," we apply a standard of review

"even more deferential than a pure clearly erroneous standard." *United States v. Najera*, 915 F.3d 997, 1002 (5th Cir. 2019) (internal quotation marks and citation omitted). To this end, we will not reverse the district court's decision "unless it is without foundation." *Id.* (internal quotation marks and citation omitted).

Citing a physical altercation that Phillips had with another inmate, the district court refused to reduce Phillips's sentence for acceptance of responsibility. Although Phillips says that he fought in self-defense, the probation officer concluded otherwise after studying the recording. Rather than reviewing the video footage firsthand, however, Phillips contends that the court improperly delegated its factual findings to the probation officer and erred in consequence.

A defendant who "clearly demonstrates acceptance of responsibility for his offense" is usually entitled to a two-level reduction to his offense level, U.S.S.G. § 3E1.1(a), and potentially to an additional one-level reduction, *id.* § 3E1.1(b). Even so, a defendant is not entitled to a reduction for acceptance of responsibility merely because he truthfully admits his criminal conduct. *See United States v. Hinojosa-Almance*, 977 F.3d 407, 410 (5th Cir. 2020). Indeed, one relevant factor before applying the reduction is the defendant's "voluntary termination or withdrawal from criminal conduct or associations." U.S.S.G. § 3E1.1, cmt. n.1(B).

On several occasions, this court has affirmed the denial of the acceptance-of-responsibility reduction based on the defendant's continued criminal conduct when the defendant was involved in a physical altercation while awaiting sentencing. *See, e.g.*, *United States v. McKissick*, No. 22-50540, 2023 WL 2366985, 1 (5th Cir. Mar. 6, 2023) (unpublished); *United States v. Arteaga-Rios*, 762 F. App'x 177, 177–78 (5th Cir. 2019). We see no reason to make an exception here. Review of the video shows that Phillips instigated an

oral confrontation and actively encouraged the other inmate to escalate the argument to physical violence. Because Phillips instigated and participated in the fight, the denial of the reduction for acceptance of responsibility was not without foundation. *See Najera*, 915 F.3d at 1002; U.S.S.G. § 3E1.1, cmt. n.1(B).

That the district court relied on the PSR rather than its individual review had neither an effect on "the outcome of the district court proceedings" nor on Phillips's "substantial rights." *United States v. Munoz*, 150 F.3d 401, 412–13 (5th Cir. 1998) (quoting Fed. R. Crim. P. 52(a)). This is principally because the video footage of the fight supports the PSR's account of the altercation. Any alleged errors related to Phillips's sentencing were thus harmless. *See* 28 U.S.C. § 2111 (instructing appellate courts to ignore "errors or defects which do not affect the substantial rights of the parties").

IV

Based on the foregoing, we AFFIRM.